264 So.2d 317 (1972)
Earl Talmadge STRICKLAND
v.
Bobby R. NUTT et al.
Mrs. Viola B. DEROUEN, Individually and on behalf of her minor child, Freddie J. Derouen
v.
Bobby R. NUTT et al.
Nos. 8783, 8784.
Court of Appeal of Louisiana, First Circuit.
May 29, 1972.
Rehearing Denied June 26, 1972.
Writ Refused September 22, 1972.
*318 Robert C. Leininger, New Orleans, and H. Minor Pipes, Houma (Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher), New Orleans, for appellants.
Harold H. Wedig, New Orleans (Marcel, Fanguy & Tauzin), Houma, Philip J. McMahon (Borowski, Lofaso, McMahon & McCollam), Houma, for appellees.
Before LOTTINGER, SARTAIN and CRAIN, JJ.
En Banc. Rehearing Denied June 26, 1972.
CRAIN, Judge.
There are consolidated cases involving maritime tort claims. In the first, Mrs. Viola B. Derouen, individually and on behalf of her minor son, Freddie J. Derouen, filed a wrongful death action against Bobbie R. Nutt, Union Oil Co., (hereafter "Union") and Aetna Casualty and Surety Company (hereafter "Aetna") for damages resulting from the death of her husband, Uwell J. Derouen in a collision between a *319 boat piloted by Derouen, owned by Loomis Hydraulic Testing Co., Inc. (hereafter Loomis) and a boat piloted by Nutt, owned by Union. The accident occurred at the intersection of two navigable canals in the Lake Pagey Oil field on February 2, 1966.
Since the accident occurred at the intersection of two navigable canals, the dispute falls within the admiralty jurisdiction of the United States. However, suit was brought in state court under the Savings to Suitors Clause of the U.S. Constitution giving state and federal courts concurrent jurisdiction in cases involving maritime personal injury claims based on negligence. Rojas v. Robin, 230 La. 1096, 90 So.2d 58 (1956); Guilbeau v. Calzada, La.App., 240 So.2d 104 (1970). The defendants in this action third parties Loomis, Derouen's employer, contending that in the event they were held liable that Loomis was obligated to indemnify them under a service contract between Loomis and Union dated December 14, 1961 in force at the time of the accident, containing an indemnity clause.
In the second suit, the guest passenger in the vessel being piloted by Uwell J. Derouen, Earl T. Strickland, claimed damages for personal injuries received by him in the accident from Union, Aetna and Bobby R. Nutt. The defendants again third partied Loomis based on the service contract mentioned above. Loomis answered the third party petition and filed a reconventional demand for property damage to its vessel of $1,000.00. Union, Aetna, and Bobby R. Nutt also filed a third party petition against the Derouen estate seeking reimbursement by way of contribution, indemnification or otherwise, if they were found liable for Strickland's personal injuries.
Home Insurance Company, the compensation insurer of Loomis, intervened against Nutt, Union and Aetna asking for recovery of $630.55 paid in compensation and medical benefits to Earl T. Strickland.
The trial court rendered judgment in favor of Mrs. Derouen for $78,000.00, in favor of Freddie Derouen for $9,000.00 and in favor of Strickland for $15,000.00. The judgments were cast against Union, Aetna and Nutt. Additionally the trial court awarded Loomis $1000.00 and Home Insurance $630.55. The third party demands were dismissed.
The trial court made extensive findings of fact which we quote with approval:
"On December 12, 1966 at approximately 3:00 P.M., the decedent Uwell J. Derouen, a shopforeman for Loomis, and Earl T. Strickland, a sales representative for Loomis, departed Theriot landing in a company motorboat which was sixteen feet long, built of fiberglass, and powered by two 40 h. p. Johnson outboard motors. They headed toward Gracey-Hellum Rig #5, a Union Well, to check employees on the rig. The work being performed on Rig #5 was pursuant to a "Service Contract", between Union and Loomis, dated December 14, 1966. They arrived at the rig around 4:00 P.M., stayed for about a half hour and departed.
When they departed Gracey-Hellums Rig #5, Derouen was driving. He proceeded down the canal, which dead-ended where Rig #5 was located, doing approximately thirty-five miles per hour. The weather was very cold and both men were heavily clothed. Due to the cold and wind they were both sitting behind the windshield which was cracked. As Derouen approached Union's Main Terminal Area canal, he was navigating the motorboat parallel to and approximately sixteen feet to the left of a mud bank five to eight feet high topped with thick vegetation four to six feet high. Derouen slowed the motorboat to about fifteen to eighteen miles per hour as he entered the intersection.
The crewboat being operated by Bobby R. Nutt had departed Union's Main Terminal *320 at the end of that canal. As the crewboat approached the intersection, it was approximately thirty to forty feet from the left bank or to the left of the center of the canal. The sliding plexiglass window to the left of Nutt was cracked and fogged. Immediately prior to entering the intersection and in order to execute his turn, Nutt slowed his port engine, and turned his wheel slightly to the left. This action caused the boat to bank to the left and begin her left turn. At this point, the motorboat came into sight. At that moment the crewboat swerved to its right and the motorboat simultaneously swerved to its left resulting in the collision."
The trial court found that federal maritime statutes and jurisprudence impose the duty on boat operators to avoid negligence and exercise reasonable care. The trial judge further found that both Boddy R. Nutt and Derouen were negligently operating their vessels at the time of the accident and that the negligence of both parties proximately caused the accident. Derouen's negligence consisted of entering a blind intersection without sounding a horn and at an excessive rate of speed under the circumstances, well knowing that this particular intersection where the accident occurred was heavily traveled. The negligence of Bobby R. Nutt consisted of traveling on the wrong side of the canal and operating the crew boat at an excessive rate of speed under the circumstances, failing to sound a horn on entering the intersection and operating the boat in the manner indicated with cracked and fogged windows.
After finding both parties negligent, the trial court applied the rules of comparative negligence applicable to maritime tort claims. In doing so the trial court assessed Nutt's negligence at 60% and Derouen's contributory negligence at 40%. We find no manifest error in this holding as to negligence nor the percentage of negligence attributed under the comparative negligence doctrine. In addition to objections to the trial court's findings as to negligence, the parties to this controversy cite several errors alleged to have been committed by the trial judge as to other aspects of the case. Union, Aetna and Nutt cite as errors the following:
1. The amount of damages awarded to the Derouen heirs by the trial court;
2. The trial court's dismissal of the third party petition of Union, Aetna and Nutt for contribution against the Derouen estate in the Strickland suit;
3. The trial court's refusal to grant contractual indemnity in favor of Union, Aetna and Nutt against Loomis in both the Derouen and the Strickland claims;
4. The trial court's refusal to grant contribution in favor of Union, Aetna and Nutt against Loomis in both the Derouen and Strickland claims.
The heirs of Derouen cite as error the failure of the trial court to consider loss of love and affection as an item of damage in making his award.
We will consider each of these specifications of error individually.

THE AMOUNT OF THE AWARD FOR THE WRONGFUL DEATH OF DEROUEN
Prior to the 1970 U.S. Supreme Court decision in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, which overruled The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358, there was no wrongful death action available under maritime jurisprudence for death caused by negligence. In death occurring within state territorial waters aggrieved persons could avail themselves of wrongful death statutes of the state having jurisdiction and could file damage suits based on the statutes. When such statutes were found applicable, the state law involving and pertinent to the remedy provided by the statute was applied. Thus, for example, the case at bar *321 would have been brought under the Louisiana death statute, Article 2315. Consequently, the Louisiana rule barring recovery for contributory negligence would have been applied and recovery denied. In the Moragne case, however, the U.S. Supreme Court created a uniform federal right of action in martitime law for wrongful death. In establishing the right, the rule of comparative negligence currently used in a majority of states and in maritime personal injury suits, provides the method of assessing responsibility and damages in the action. Under the rule of comparative negligence, the Court first determines the total damage due the claimant and then deducts the percentage of negligence of the claimant or the deceased from the total damages. The trial judge here correctly applied the method of arriving at damages under the comparative negligence theory.
As to the elements of damage under the new maritime tort action of wrongful death, the Moragne case created a uniform wrongful death action, where before state wrongful death statutes with widely varying provisions were applied. The Court indicated that the details of the new remedy would be jurisprudentially arrived at through analogy to federal wrongful death statutes such as the Jones Act[1] and the Death on the High Seas Act.[2] It is to these statutes we must look to determine the elements of damage.
Loss of support as an element of damage is recognized under the general maritime law, the Jones Act, and the Death on the High Seas Act. Therefore it is clear, as the trial court pointed out in its reasons for judgment, that the plaintiffs are entitled to recover for that item of damage.
The trial judge in calculating the loss of support due Mrs. Derouen and her minor son, Freddie, make the following findings:
"The decedent, age 41 years old, was earning $9,000.00 a year at the time of his death (with good prospects for continued increase of $350.00 to $700.00 per year). Calculating 80% of this income as devoted to the support of his dependents ($7,200.00 per year) and discounting this at 5% over the decedent's work life expectancy of 24 years, one arrives at a total pecuniary loss of support of $99,349.92 not taking into consideration any retirement benefits or increases in pay. Taking the latter into consideration, the Court is of the opinion that the widow should be awarded $130,000.00 for her loss of support, subject to deduction for decedent's comparative negligence.
As to the minor son, Freddie J. Derouen, who subsequent to his father's death was emancipated by marriage, the Court is of the opinion that the son is entitled to an award of $15,000.00 for loss of support and guidance subject to deduction for the decedent's comparative negligence."
Under the Death on the High Seas Act it has been held that allowable damages must be the result of some measurable pecuniary loss due to the beneficiary. There must be reasonable expectation that the benefits awarded would have accrued to the complainant from the continued life of the decedent. Dugas v. National Aircraft Corporation, 3 Cir., 1971, 438 F.2d 1386. Future earnings, with allowances for reasonable and expected increases in earnings and reasonable and expected deductions such as taxes have been allowed in computing the pecuniary loss. We find that the trial judge's computation of the damage was reasonable and we find no manifest error therein.

THE ELEMENT OF LOSS OF LOVE AND AFFECTION
Appellees contend that the trial court erred in not awarding damages for loss of love and affection. The Courts of Louisiana have long recognized loss of *322 love and affection as an element of damages under Civil Code Article 2315, Louisiana's wrongful death provision. However, this element has not been allowed under the Jones Act nor the Death on the High Seas Act. It is actually allowed in only a minority of state actions for wrongful death. The Moragne case, with the desire for uniformity in maritime death actions announced therein, precludes loss of love and affection as an element of damage here. The trial court so held and we affirm his conclusion.

THE THIRD PARTY DEMAND OF UNION, AETNA AND NUTT FOR CONTRACTUAL INDEMNITY
Unions' third party demand filed against Loomis for total indemnification is based on certain indemnity provisions in the service contract existing between the two. On this issue the trial Court found as follows:
"The third party demand for contractual indemnity is based on certain provisions of a written `Service Contract' between Union and Loomis which called for Loomis to perform "Inspection of tubular goods as requested by Union Oil Representatives." (Exhibit Union1). Although the contract is dated December 14, 1961, by stipulation, Loomis conceded the contract was in full force and effect on December 12, 1966 and that the work being done by Loomis for Union on the north side of the Lake Pagie Field on that date, was being performed pursuant to the contract.
The first paragraph of the pertinent article which is set out on Page 2 of the "SERVICE CONTRACT" reads as follows:

"`6. INDEMNIFICATION AND INSURANCE:
CONTRACTOR assumes and agrees to hold harmless, indemnify and defend UNION against any and all liability for injuries and damages to CONTRACTOR himself and to CONTRACTOR'S employees, agent, subcontractors and guests, incident to or resulting from any and all operations performed by CONTRACTOR under any of the terms of this contract."'
This contract goes on further and in specific detail to require Loomis to assume full liability for all damage to Union's equipment, but expressly limits this undertaking to losses resulting from Loomis' negligence and, finally, to carry various types of liability insurance coverage in specified amounts for the protection of it and Union while Loomis is performing its work under the contract.
In Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1 Cir. 1968), the Court in discussing indemnity agreements, stated at page 799;
"(1, 2) The general rule is stated thus:
"A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. 27 Am.Jr., Indemnity, § 15, page 464; 42 C.J.S. Indemnity § 12, page 580.' The established principle supporting the rule is that general words alone, i. e., `any and all liability,' do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter.
The minority view is bottomed on the premise that the words `any and all liability' are unambiguous and the use thereof means just that and the restrictive interpretation adhered to in the majority view is violative of the rule of law that a contract freely entered into, which is not against public policy or prohibited by law, is the law between the parties and subject to judicial recognition and enforcement. 77 A.L.R.2d 1134.

*323 For reasons hereinafter stated we are of the opinion and so hold that Louisiana is committed to the majority view."
A careful reading of the indemnification clause in question leads to the understanding that Loomis "assumes and agrees to hold harmless, indemnity and defend Union against any and all liability for injuries and damages * * * resulting from any and all operations performed by Contractor (Loomis) under any of the terms of this contract." (Emphasis added) This language does not meet the test set out in Arnold v. Stupp Corporation, supra, in fact the words "any and all liability" rejected in Arnold are used in the contract under consideration herein. It is the Court's opinion, from a reading of the language above quoted, that Loomis did not intend to indemnify Union for its negligence under the contract. Furthermore, the Court has serious doubt that the parties intended this contract to apply to a factual situation such as the one at bar."
We reject the proposition that indemnity contracts should be interpreted differently depending on whether the indemnitee is solely negligent or there is concurrent negligence on the part of both indemnitee and indemnitor. We are aware of the case of Cole v. Chevron Chemical Company-Oronite Division, 334 F.Supp. 263 (U.S.D.C., E.D.La.1971) wherein the Federal District Judge indicated that the holdings of Jennings v. Ralston Purina Co., 201 So.2d 168 (La.App.2d Cir. 1967) and Arnold v. Stupp Corp., 205 So.2d 797 (La.App.1st Cir. 1967) were applicable only where there was sole negligence on the part of the indemnitee. We agree rather with the language of the U.S. Fifth Circuit Court of Appeals in Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge, 424 F.2d 684 (1970) that,
"Although in Batson-Cook [Batson-Cook Company v. Industrial Steel Erectors, 5 Cir., 257 F.2d 410] the indemnitor was not negligent and the damage was caused solely by the negligence of the indemnitee, the rule requiring specificity of the intent to indemnify for the indemnitee's own negligence is equally applicable in situations where, as here, the concurring negligence of the indemnitee and indemnitor causes the damage. See United States v. Seckinger, 5 Cir. 1969, 408 F.2d 146, reversed on other grounds 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (October 13, 1969)."
We are of the opinion that the above language sets forth the better rule for interpreting indemnity agreements and that the Courts of this state should adopt that rule. Accordingly, the decision of the trial court with respect to contractual indemnity is correct.

THE CLAIM OF UNION, AETNA AND NUTT FOR CONTRIBUTION AGAINST THE DEROUEN ESTATE FOR STRICKLAND'S DAMAGES
Union, Aetna and Nutt seek contribution via Third Party Demand against the Derouen Estate for damages assessed against them awarded to Earl T. Strickland, the guest passenger.
The petition is based on the contention that since Derouen has been found by the trial court to be contributorily negligent, his estate must contribute a portion of the damages assessed against the other negligent parties, i. e., Union, Aetna and Nutt.
It is a well settled rule in cases involving maritime collisions that contribution is determined by the divided damages rule. The Sterling, 106 U.S. 647, 1 S.Ct. 89, 27 L.Ed. 98 (1882); Jakobsen v. Springer, 87 F. 948, 31 C.C.A. 315; Gulf Oil Corp. v. Chotin, Inc., 402 F.2d 293 (5th Cir. 1968). This rule requires that vessels or vessel owners found to be at fault in a collision must contribute an equal portion of the total damages sustained by either vessel as a result of the collision. The third party plaintiffs have sought to recover a portion of the damages assessed to *324 them under the divided damage rule against the Derouen estate. Without determining whether or not the divided damage rule would require contributions between the vessels or vessel owners in this case, it is clear that it can not require contribution from the Derouen estate. A similar contention regarding the divided damage rule was made by vessel owners assessed with damages in the case of Empire Seafoods, Inc. v. Anderson, 5 Cir., 398 F. 2d 204 (1968). In that case, the court found that two injured employees were contributorily negligent in causing their own and each other's injuries and that in addition, the vessel owners were also contributorily negligent. The vessel owners then sought contribution under the divided damage rule as against the employees requesting that each negligent party contribute one-quarter of the total damage sustained and awarded. The Fifth Circuit Court of Appeals in denying the contention stated that,
"The theory of divided damages advanced by Empire and Cleary is both intriguing and novel because it treats Anderson and Cleary not as persons but as vessels, and then proceeds to divide the vessel damage by fourths and the damages of Anderson & Gates, reduced by their own fault, by thirds. There is no case support for this theory. Anderson and Gates are not vessels nor can they be so categorized under the Extension Act. For the purpose of maritime relationships under the Act, in the context of this case, they are treated as the "crew" of the bridge which, in turn, is treated as a vessel. They therefore cannot be treated as vessels, for divided damages purposes."
As in the Empire case, Derouen was a member of the crew of the vessel which he was operating, and therefore is not treated as a vessel. Thus no direct cause of action is allowed against his estate under the divided damage rule.

CLAIM OF UNION, AETNA AND NUTT FOR CONTRIBUTION AGAINST LOOMIS IN BOTH THE DEROUEN AND STRICKLAND SUITS
Union, Aetna and Boddy R. Nutt seek contribution from Loomis based on the fault of Derouen. The trial court refused to rule on the issue involving contribution from Loomis since the pleadings did not raise the issue of contribution from Loomis, but rather claimed indemnification under contract. The trial court in its reasons for judgment and in the judgment reserved all rights in favor of Aetna, Union and Nutt to seek contribution from Loomis under the divided damages rule discussed above.
By amended petition after judgment, Union, Aetna and Nutt asked for contribution against Loomis for the first time. Subsequently the trial court denied a motion for a new trial. We affirm this ruling as within his discretion. We neither affirm nor reject the holding of the trial judge that the divided damage rule is applicable in a suit by Union, Aetna and Nutt against Loomis for contribution, and reserving their right to bring such suit in a separate action in Federal or State Court. We limit ourselves to a holding that it was within the discretion of the trial court to refuse to consider such claim raised for the first time after completion of trial on the merits.
Accordingly the judgment of the trial court is affirmed, all cost to be paid by Union, Aetna and Nutt.
Affirmed.
NOTES
[1] Jones Act46 U.S.C. Sec. 688 (1964).
[2] Death on the High Seas Act46 U.S. C. Sec. 761 et seq.