334 So.2d 530 (1976)
Joseph POLOZOLA
v.
GARLOCK, INC., et al.
No. 10736.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Rehearing Denied June 30, 1976.
Writ Granted October 20, 1976.
*531 Boris F. Navratil, Baton Rouge, Breazeale, Sachse & Wilson, Baton Rouge, for appellants.
Wm. F. Kaufman, III, and John W. Swanner, Baton Rouge, for plaintiff-appellee.
Gerald L. Walter, Jr., Baton Rouge, for third party defendant H. E. Wiese, Inc. and Hartford Acc. & Indem., et al.
Before SARTAIN, EDWARDS AND CHIASSON, JJ.
CHIASSON, Judge.
This is an appeal of a summary judgment of the District Court dismissing the demands of the third party plaintiffs, appellants in this case, Jon Kiggans, David Schneblen, Bill Garlington, and their insurer Associated Indemnity Corporation, for indemnification under a contract between Dow Chemical Company and National Maintenance Corporation. The District Court's decision was based on a statement of uncontested facts prepared by the third party defendants, appellees, National Maintenance Corporation and Fireman's Fund Insurance Company.
The uncontested facts as offered by the appellees are:
"1. On November 4, 1970, the Dow Chemical Company entered into a contract with National Maintenance Corporation, according to the terms of which National Maintenance was to perform certain maintenance services at Dow's Plaquemine facility.
"2. The Dow Chemical Company also entered into a contract with H. E. Wiese, Inc., according to the terms of which H. E. Wiese, Inc., was to perform certain maintenance services at Dow's Plaquemine facility.
"3. The Dow facility was divided into two areas for purposes of maintenance, with one area generally being assigned to National Maintenance and one area generally assigned to Wiese.
"4. Employees carried on Wiese's payroll frequently worked in the area generally assigned to National Maintenance, and employees carried on National Maintenance's payroll frequently worked in the area generally assigned to Wiese, depending on the type of skilled worker needed in a particular area at the time.
"5. Joseph Polozola was a pipe fitter, an hourly employee carried on the Wiese payroll, and he was working in the area of Dow's facility generally assigned to National Maintenance on August 20, 1971. Polozola's direct supervisor at that time was John R. Thibodaux, Jr., a pipe fitter foreman, also carried on the Wiese payroll, and he was performing a task at the direction of Bill Garlington, a Dow employee.

*532 "6. The plaintiff in the principal action sustained an on-the-job injury on August 20, 1971, when he was struck in the face by a jet of liquid propylene oxide which shot out from a valve flange on which he was working.
"7. Plaintiff in the principal action brought suit against Garlock, Inc., National Maintenance Corporation, Cecil Voth, John Kiggans, David Schneblen, and Bill Garlington and others, alleging that their negligence caused his injury.
"8. A settlement of all claims by plaintiff in the principal action has been completed, with the payment of a certain sum having been made to Joseph Polozola on behalf of third party plaintiffs, Jon Kiggans, David Schneblen, and Bill Garlington, by third party plaintiff, Associated Indemnity Corporation.
"9. Third party plaintiffs have filed a third party demand against National Maintenance and Fireman's Fund, contending that they are entitled to be indemnified by third party defendants for all costs incurred by them as a result of the claims made against Kiggans, Schneblen, and Garlington by Polozola, including the amount paid to Polozola in settlement and attorney's fees incurred in defense of the claim and in prosecution of the third demand.
"10. Article VI of the contract between Dow and National Maintenance provides as follows:
'Contractor assumes the entire responsibility and liability and will protect, indemnify and hold harmless Dow, its agents, servants, and employees from and against any and all losses, expenses, demands, and claims made against Dow, its agents, servants, and employees, by Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors or any other third person because of injury or alleged injury (including death), whether caused by Dow's negligence or otherwise, arising from any source while Contractor or its subcontractors, or any employee, agent, or servant of Contractor or its subcontractors are on premises owned, operated or leased by Dow or under the control of Dow, or while Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors are performing under this agreement, and Contractor agrees to defend any suit, action or cause of action brought against Dow, its agents, servants, or employees, based on any such alleged injury, and to pay all damages, costs and expenses, including attorneys' fees, in connection therewith or resulting therefrom.'
"11. Associated Indemnity Corporation has issued a policy of insurance to the Dow Chemical Company, which is the best evidence of its contents, but, under the terms and provisions of which, Associated Indemnity Corporation paid a certain sum to Joseph Polozola to settle his claims against Jon Kiggans, David Schneblen, and Bill Garlington, and, because of said payment, Associated Indemnity Corporation claims it is subrogated to the rights, if any, which Kiggans, Schneblen, and Garlington might have exercised against third party defendants."
By stipulation in this Court the parties to this suit have also made the entire text of the agreement between Dow and National Maintenance part of the record. Article VII, Section 7.1 and Section 7.1(b) of this contract provides:
"7.1 Prior to the actual commencement of work hereunder and until final acceptance by Dow of all work to be performed hereunder, Contractor shall carry the following insurance:
"b. General Public Liability insurance is an amount not less than Three Hundred Thousand Dollars ($300,000.00) covering injuries to, or death of, any one *533 person in any one occurrence, and in an amount not less than Five Hundred Thousand Dollars ($500,000.00) for injuries to, or death of, more than one person in any one occurrence, and in an amount not less than One Hundred Thousand Dollars ($100,000.00) covering damage to the property of Dow and of third parties."
In addition Section 2.2 of Exhibit "A", part of the agreement between Dow and National Maintenance, provides:
"In addition to the above payments, Dow shall pay Contractor for its services certain fees as hereinafter set forth, which shall include all of Contractor's profit and expenses and overhead items whatsoever, such as, but without limitation, all clerical employees (other than those furnished to Dow at Dow's plantsite under Paragraph 1.1(a) above), insurance, accounting, auditing, telephone and telegraph charges, all payroll taxes, all fringe benefits to salaried employees, safety equipment, and all office expenses. . ."
The appellant contends that the District Court erred in finding that:
"1. The language of the indemnity agreement between Dow and National Maintenance did not afford indemnity to Dow's employees, whose negligence was alleged to have caused the claim for which indemnity was demanded, and
"2. The phrase in the indemnity agreement, `caused by Dow's negligence', was ambiguous, because it was uncertain that it was intended to include the negligence of Dow's employees."
The issue before this Court is whether or not National Maintenance is obligated, under the indemnity clause set out above, to indemnify and defend Kiggans, Schneblen, Garlington, and Associated Indemnity against the claims made by Mr. Polozola in the main demand, these demands being based upon an allegation that Kiggans, Schneblen, and Garlington were negligent and that their negligence led to Polozola's injuries.
A contract of indemnity whereby one assumes indemnification against his own negligence must be strictly construed. Jennings v. Ralston Purina Co., 201 So.2d 168 (La.App. 2nd Cir. 1967). Further "a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms". Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1st Cir. 1968).
The holding in Arnold that an agreement to indemnify an indemnitee for his own negligence must be expressly set out was reaffirmed in Strickland v. Nutt, 264 So.2d 317 (La.App. 1st Cir. 1972). Strickland extended the specificity requirement to situations involving concurrent negligence on the part of both the indemnitor and the indemnitee.
In view of the foregoing authorities, this court holds that National Maintenance and its insurer had no obligation to indemnify and defend Kiggans, Schneblen, and Garlington, and Associated Indemnity in this matter because the contracts says,
"whether caused by Dow's negligence or otherwise,"
but it does not say,
"whether caused by Dow's negligence or the negligence of Dow's agents, servants and employees,"
and it certainly does not contain the language which this Court recently stated would show the intent necessary to obligate an indemnitor to indemnify an indemnitee against the consequences of his own negligence:
"even though caused, occasioned or contributed to by the negligence, either sole or concurrent, of the indemnitee." Jayco Sales and Service, Inc. v. Smith, 303 So.2d 554 (La.App. 1st Cir., 1974).
*534 In the introductory clause of the instant indemnity agreement, the following are enumerated as indemnitees, "Dow, its agents, servants, and employees." However, in the clause where the indemnitee is to be indemnified from the consequences of its own negligence we find only the following; "whether caused by Dow's negligence, or otherwise * * *".
Conspicuously missing from the "negligence clause" are "the agents, servants, or employees" of Dow. Before National Maintenance can be held to have agreed to indemnify "the agents, servants, or employees (Kiggans, Schneblen, and Garlington)" of Dow from the consequences of their own negligence, that intent must be expressed "in unequivocal terms." Arnold v. Stupp, supra.
No such intent is expressed "in unequivocal terms", and it is not permissible for the Court to find such an intent through implication. Before National Maintenance can be held to indemnify Kiggans, Schneblen, and Garlington from the consequences of their own negligence, they, or "agents, servants, or employees" of Dow would have to be specifically mentioned in the "negligence clause" of the indemnity agreement. The failure to do so is fatal to the claim of Kiggans, Schneblen, and Garlington. Since Associated Indemnity is merely subrogated to their rights, it has no claim under the indemnity agreement either.
There is nothing inconsistent, or unusual, about the omission of the "agents, servants, and employees" of Dow from the negligence portion of the indemnity agreement. All this omission means is that National Maintenance agreed to indemnify Dow, the corporation, from the consequences of its own negligence, but did not agree to so indemnify the "agents, servants, and employees". Had that intention been present, it could have been expressed in "unequivocal terms" by naming the "agents, servants, and employees" at that point.
The second specification of error by appellants contends that the Trial Court erred in concluding that the phrase "caused by Dow's negligence", contained in the indemnity agreement, was ambiguous because it was uncertain that it was intended to include the negligence of Dow's employees.
Article 966 of the Louisiana Code of Civil Procedure states that a summary judgment is proper in those cases where ". . . there is no genuine issue as to material fact". If in fact the Trial Court had found any ambiguity in the agreement, there would be a genuine issue as to material fact and summary judgment would not be the proper procedure.
Rather we hold, as the Trial Judge must have, that the intent to indemnify Dow's employees for their own negligence was not expressed in the agreement and certainly not "in unequivocal terms" within the meaning of the Arnold Case.
The question of what is the meaning that should be given by a Court to the words of a contract is a question of fact, not a question of law. 3 Corbin on Contracts § 554.
"The determination of the legal operation of a contract, after the meaning of its language has been adopted by the process of interpretation, is always for the Court, because `legal operation' is the result of applying rules of law to the facts". Corbin, supra.
In interpreting the agreement, this Court is required by law to give legal effect thereto according to the true intent of the parties, and that intent is to be determined by the words of the agreement, "when these are clear and explicit and lead to no absurd consequences". Civil Code, Article 1945.
For the above and foregoing reasons, the judgment of the Trial Court is affirmed at appellants' costs.
AFFIRMED.