William Crawford, an employee of the defendant, was killed the afternoon of March 12, 1940, when defendant's hull house in which he was working was demolished by a terrific cyclone which left death and destruction in its wake through the City of Shreveport, Louisiana.
Plaintiff, a sister of the deceased, alleging dependency upon him for support, instituted this suit to recover workmen's compensation.
Sallie Crawford, a resident of Port Arthur, Texas, intervened in her own right as alleged dependent widow and also as natural tutrix of Roberta Crawford, aged sixteen, alleged dependent daughter of the deceased. She prays for judgment awarding compensation in consonance with her allegations and that plaintiff's demand therefor be rejected.
Defendant, answering plaintiff's petition, denies her alleged dependency and denies liability for compensation in any event. It is admitted that deceased met death while in the course of his employment, but it is specially denied that he died as a result of an accident arising out of his employment. The character of the cyclone above mentioned, with detailed description of its destruction of and damage to buildings of various kinds in its path, with list of persons killed thereby, is at length set out. It is further averred that the building in which the deceased worked and wherein he was killed was efficiently built of heavy timbers and designed to and did effectively withstand usual and ordinary attacks from weather and atmospheric conditions; that when killed the deceased was trucking cotton seed meal from one part of the building to another; that he was not exposed to danger of injury or death from a cyclone to a greater degree by reason of his employment; that the risk of being injured or killed by a cyclone is a risk to which all persons similarly situated are equally exposed; that death in this case was exclusively due to and caused by an act of God.
It is further averred by defendant that the deceased left no dependents whatever and for this reason, even though the case would otherwise be compensable, the right to recover compensation is vested in no one.
Defendant's answer to the intervention in substance and effect is the same as that made to plaintiff's petition.
Plaintiff's answer to the petition of intervention, while admitting the alleged relationship between intervenors and the deceased, denies that either was dependent upon the deceased for support and denies that he contributed to the support of either.
After joinder of issue, Sallie Crawford amended the petition of intervention by abandoning her demand for compensation and by asserting that the full amount thereof is due to the daughter, Roberta.
The case was tried upon a stipulation of facts augmented by parol evidence. The demands of the intervenors were rejected but there was judgment for plaintiff as by her prayed for. Defendant only prosecutes appeal therefrom.
There being no dispute about the hazardous character of defendant's business, employment and weekly wage of the deceased, and it being admitted that he was killed in the course of his employment, the paramount question to be decided is whether death was the result of an accident arising out of his employment. If this question is negatively decided the secondary questions become moot.
The Employers' Liability Act, Act No. 20 of 1914, provides that its benefits apply to every person "performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation", etc. Therefore, it is an imperative condition precedent *Page 744 
to the right of an injured employee or his dependent widow and/or heirs, in case of his death, to recover workmen's compensation that he must have been injured through an accident:
1. While performing services arising out of his employment, and
2. In the course of such employment.
No fast, general rule may be adopted for the determination of the latter requirement. The facts of each case necessarily must have controlling influence. Generally, but not always, when an accident occurs while the workman is performing services arising out of his employment, it occurs in the course of such employment. In the present case, the accident causing death was produced by an agency of an extraordinary and unusual character. It was unforeseen and could not well have been guarded against. Cyclones come unheralded, move with uncontrolled fury, do their damage quickly and pass away. All persons in the wake of one are equally exposed to danger of injury or death therefrom.
The present case is of first impression in this state. No suit involving a claim for workmen's compensation based on an accident caused by cyclone has heretofore been presented to the courts. However, several cases have been adjudicated wherein it was held that the injury or death involved was not the result of an accident arising out of employment. Such cases will aid us in charting a proper course in the case at bar.
The words "arising out of" in the sense employed in the Workmen's Compensation Law refer to the origin or cause of the accident and are descriptive of its character, while the words "in the course of" refer to the time, place and circumstances under which the accident takes place.
We believe the case of Myers v. Louisiana Railway Navigation Company, decided February 12, 1917, and reported in 140 La. 937, 74 So. 256, 257, is the first in our jurisprudence wherein the court was called upon to specifically say, after serious contest, whether the injury involved arose out of the employment. Justice Provosty, organ of the court, elaborately discusses the question, quotes from many authorities treating the subject, and announces broad principles applicable thereto. It is held, therein, as reflected from the syllabus, that:
"The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."
To support this holding the leading case of In re Employers' Liability Assur. Corporation (In re McNicol), 215 Mass. 497,102 N.E. 697, L.R.A.1916A, 306, is quoted from to this extent:
"It is sufficient to say that an injury is received `in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises `out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment * * *. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."
The English case of Fitzgerald v. Clarke, 99 L.T.N.S. 101, 1 B.W.C.C. 197, is also quoted from, to-wit:
"The words `out of' point to the origin or cause of the accident; the words `in the course of' to the time, place and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances *Page 745 
under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words `out of' involves the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment."
There has been no departure by our courts from the principle announced in the Myers case. On the contrary, it has subsequently been cited with approval in many cases.
This court had before it the identical question in Crysel v. R.W. Briggs Co. et al., La.App., 146 So. 489, 490. Judge Mills, the organ of the court, discussed the question exhaustively and supported his reasoning by copious list of authorities of various jurisdictions in the United States and from England.
There is unanimity of authority to the effect that for an injury to arise out of employment the risk from which the injury resulted must have been greater for the workman than for those not so engaged. There must be at least a color of causal connection between the employment and the cause of the injury. "It must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." As said in the Crysel case, supra:
"It is not sufficient that the accident would not have happened but for the fact of the employment; it must have occurred because of some danger or risk inherent to the nature of the employment, or to some risk to which the employee is peculiarly subjected because of his employment."
Applying to the facts of this case the test propounded by the aforementioned principles, the conclusion forcefully arises that the danger from injury from a cyclone was no greater for the deceased than it was for any person not so engaged. The danger from such an uncontrollable agency was certainly not inherent nor was the risk an incident of nor was it peculiar to such employment. The accident was in no sense due to the employment.
The cyclone mentioned herein entered the City of Shreveport from its west side. It traveled easterly through a thickly settled portion of the city. Its path was approximately one-half mile wide. Ten persons were killed by it. One was killed west of the city limits. Several were killed near the Fair Grounds in the western part of the city, while four met death from it in the eastern section thereof, just before the cyclone crossed Red River. Fifty more persons were injured. Scores of buildings were damaged badly and many entirely destroyed. Two thousand dwellings were damaged slightly. Defendant's plant in the western section of the city sustained injury to the extent of $40,000. The brick building of Libby-Owens-Ford Glass Company was damaged to the extent of $200,000 and the buildings and improvements of the Louisiana State Fair sustained damages to the extent of $100,000. Additional damage of a miscellaneous character was inflicted upon other kinds of improved property.
Defendant's superintendent of erection testified that he would have felt safer from injury from a cyclone in his own home than in defendant's hull house. He explains this by saying that the interior of his house was braced by partition walls which were absent from the hull house. Plaintiff, using this testimony as a basis, argues that since the hull house's resistance to the cyclone was not as great as would have been that of the residence, due to absence of interior supports, its lack of strength in this respect was a contributing cause of Crawford's death. The argument is not sound, when viewed in the light of admitted facts. Many dwellings were destroyed and/or badly damaged in some of which persons were killed. Therefore, dwellings were in no sense secure from the cyclone's fury. Buildings of brick and cement construction were damaged. This proves that the cyclone excepted nothing from its wake of destruction, whether strongly built or not. These facts certainly refute the argument that because the hull house had no supporting partition walls, its destruction constitutes a contributing cause of the accident. It would have been demolished regardless of its construction.
We are reminded that in Gasca v. Pipe Line Company, 2 La.App. 483 et seq., this court awarded compensation to the widow of a workman killed by lightning. The facts of that case show that the workman was struck and killed by lightning at the lunch hour when he had taken shelter from rain under a nearby tree. It was held that the suspension of work at the noon hour did not constitute a break in the employment. The work was being performed out in the open country with no protection from rain, storm or lightning. On *Page 746 
rehearing, Judge Carver tersely pitches the right to recover upon this principle, viz.:
"We think the death in this case compensable, though, because, as we appreciate the law and the facts, the conditions to which Gasca's employment subjected him, increased the risk from lightning and, under the authorities, we think this a sufficient causal connection between the employment and the accident."
We are not prepared to dissent from this conclusion. The case, however, is not analogous to the present one. Here, there was no causal connection whatever between the employment and the cause of the accident, and the risk of death or injury from cyclone was not increased by the employment.
For the reasons herein assigned, the judgment appealed from is reversed, annulled and set aside and plaintiff's demand rejected at her cost.