**William P. COLE, Plaintiff,**

**v.**

**CHEVRON CHEMICAL COMPANY-ORONITE DIVISION, Defendant.**

**Civ. A. No. 68-1943.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 8, 1971.

See also, 5 Cir., 427 F.2d 390.

George J. Kambur, New Orleans, La., for plaintiff.

Lloyd C. Melancon, New Orleans, La., for Chevron Chemical Co.-Oronite Div.

John V. Baus, New Orleans, La., for Mechanical Contracting and Liberty Mutual.

ALVIN B. RUBIN, District Judge:

OPINION WITH RESPECT TO INDEMNITY ISSUES

This diversity case requires a review of Louisiana law to determine the effect to be given a contractual indemnity agreement.

Mechanical contracted with Chevron to do welding and cutting work in connection with the construction of an addition to Chevron's plant. Cole, a Mechanical employee, was injured on the job. Precluded from suing Mechanical in tort by the Louisiana Workmen's Compensation Law, Cole sued Chevron. Chevron then filed a third party complaint against Mechanical.

In a trial to a jury, Cole prevailed against Chevron and the jury awarded him $67,500. This verdict is now under attack by post trial motions. Chevron

and Mechanical had, however, agreed to submit their litigation to the court.

## I. THE CONTRACT AND THE VERDICT

Chevron's rights with regard to Mechanical are fixed by their contract. This provides in part:

> 5.1 General Liability: CONTRACTOR shall indemnify and save COMPANY harmless from and against any and all loss, damage, injury, liability and claims thereof for injuries to or death of persons, and all loss or damage to property of others, resulting directly or indirectly from CONTRACTOR'S performance of this contract.

Cole's testimony was that he hurt himself when he slipped in a pool of oil, comprised of both "old" and "new" oil. This testimony was confirmed by his fellow worker, Walters. They both testified that Cole and Walters were carrying an iron grating; Cole, following Walters, stepped over a pipe, and Cole slipped in a pool of oil. These two witnesses, whose version was obviously accepted by the jury, offered the only evidence concerning the cause of the incident and the kind of oil allegedly involved.

The evidence indicated that the "new" oil spilled when Mechanical's welders cut pipes containing this oil, but the "old" oil was presumably left from Chevron's earlier operations. Cole's theory, which the jury accepted, was that it was Chevron's duty to clean old oil from the work area before Mechanical's work began, and the duty of Chevron's firewatcher to clean spilled new oil. The jury found that Chevron was negligent and Cole was not contributorily negligent.

Since the jury apparently accepted Cole's account, it must have concluded that some of the oil was "new" oil, spilled during Mechanical's operations. If this was so, it was the duty of Mechanical's personnel to call the spill to Chevron's attention.

Cole was working under Mechanical's direction and supervision. Mechanical had an express contractual obligation to keep "a competent man in the immediate vicinity of the work to receive communications from [Chevron] and to supervise the work." The facts the jury accepted must be based on the theory that the accident was caused "directly or indirectly" by Mechanical as well as by Chevron's negligence.

The jury verdict establishes that Chevron was at fault, and Chevron is bound by that finding. But the conclusion that negligence on Chevron's part was *a* proximate cause of Cole's injury does not exclude the possibility that the injury resulted at least indirectly from Mechanical's performance of the contract.

Under the agreement, "negligence" or "fault" on Mechanical's part is not the sole condition that creates a duty to indemnify. Indemnity is due whenever Chevron sustains loss or damage resulting *directly or indirectly* from Mechanical's *performance of its contract,* whether or not Mechanical has in fact been "negligent."

## II. INTERPRETATION OF THE CONTRACT

Since Chevron and Mechanical had a contractual indemnity agreement, the cases dealing with the obligation of implied indemnity in the absence of contract are inapplicable. Compare Humble Oil and Refining Co. v. Naquin, 5 Cir. 1969, 414 F.2d 912; Halliburton Company v. Norton Drilling Company, 5 Cir. 1962, 302 F.2d 431; General Electric Co. v. Cuban American Nickel Co., 5 Cir. 1958, 396 F.2d 89; United Gas Corp. v. Guillory, 5 Cir. 1953, 206 F.2d 49.

It was not claimed in the pleadings or the pretrial order that the written indemnity agreement did not accurately reflect the understandings between Chevron and Mechanical, or that it was ambiguous, and its interpretation must therefore be determined as a matter of law, based on the language used therein

by the parties. Mills v. Fidelity & Casualty Co., 226 F.Supp. 786, at 790 aff'd per curiam Yuba Consol. Industries, Inc. v. Fidelity & Cas. Co., 5 Cir. 1964, 338 F.2d 341; and Arnold v. Stupp Corp., La.App.1967, 205 So.2d 797 at 804.

Louisiana courts, whose opinions we are obliged to follow in this diversity case, have held that a contract of indemnity will not be construed to indemnify against a loss resulting *solely* from the indemnitee's own negligent acts unless that intention is expressed in unequivocal terms. Arnold v. Stupp Corp., La.App.1968, 205 So.2d 797. Compare Jennings v. Ralston Purina Co., La.App. 1967, 201 So.2d 168, which the court distinguished in *Arnold.* See also Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir. 1970, 429 F.2d 1033, 1049 (negligence solely that of company), and Dickerson v. Continental Oil Co., 5 Cir., 449 F.2d 1209 (1971); compare the discussion by this court in Despaux v. California Co., E.D.La.1968, 286 F.Supp. 558. Louisiana, like most states, has indicated a tendency to construe indemnity agreements narrowly, particularly where, as here, they were drafted by the indemnitee. *Jennings, supra,* 201 So.2d at 175; *Arnold, supra,* 205 So.2d at 799.

But the mandate that an agreement is to be read narrowly does not mean it is to be disregarded. The agreement must be given effect according to the intention of the parties, for the contract is the law between them. Louisiana Civil Code Art. 1901.

## III. LOUISIANA LAW IN ABSENCE OF CONTRACTUAL INDEMNITY—"PURE" TORT SITUATIONS

In order to ascertain what the parties intended by their agreement, it will be helpful to compare their respective rights and duties in the absence of a contractual indemnity agreement under the basic principles of Louisiana tort and quasi-contract law.

The injured person may recover from an alleged tortfeasor if he proves that his injury resulted from the tortfeasor's negligence in whole or in part. If the negligence of some other person, not joined as a defendant, is shown to be the sole cause of the injury, then the plaintiff cannot recover. But in the case of joint tortfeasors, either of them may be cast in judgment for the full damages; hence a defendant who is obliged to pay for the full amount of the injuries resulting from his fault concurrent with the negligence of a third person may claim *contribution* from the third person, and recover a virile portion of the damage to the plaintiff. La.C.C. Arts. 2103, 2104, 2324; 2 Williston on Contracts § 345 (3d ed. 1959); Note, Contribution Among Joint Tortfeasors, 43 Tul.L.Rev. 153 (1968).

Like other states, Louisiana defines the doctrine of contribution as the right of a tortfeasor cast in judgment for an injury only partly his fault to recoup part of his loss from the other person who is also at fault.

Where, however, the defendant is held vicariously liable and his fault is not actual but only technical or constructive, he has a quasi-contractual claim for *indemnity* from the third person whose *sole fault* actually caused the injury. Appalachian Corp. v. Brooklyn Cooperage Co., 1922, 151 La. 41, 91 So. 539; Marquette Cas. Co. v. Brown, 1958, 235 La. 245, 103 So.2d 269, 273; Northwestern Mutual Fire Ass'n v. Allain, 1954, 226 La. 788, 77 So.2d 395, 399; Accord, *Humble Oil, supra* 414 F.2d at 914; *Halliburton, supra* 302 F.2d at 437; *General Electric Co., supra* 396 F.2d at 90; *United Gas, supra* 206 F.2d at 53. Implied indemnity then is the right to recoup a loss in full because someone else has in fact caused the loss. The costs of defense of the main demand and of pursuing the claim against the third person, however, are not embraced either in indemnity or contribution.

Prior to 1960, the defendant in the principal demand, if sued alone, could not enforce contribution or indemnity in the principal action. If the case result-

ed in judgment against him, he was required to file a separate action against the alleged joint tortfeasor. See Kahn v. Urania Lumber Co., La.App.1958, 103 So.2d 476; La.C.C. art. 2103 as amended by La.Acts 1960, No. 30, § 1. To avoid this multiplicity of actions, additional legal expense, possible inconsistent results, and other hardships, Art. 2103 of the Louisiana Civil Code was amended to permit the defendant to bring a third party demand against the alleged co-debtor. This change in Louisiana's rules had both procedural and substantive aspects. See LSA–CCP Art. 1111 et seq.; LSA–CC Art. 2103, and explanatory notes thereto.

## IV. LOUISIANA LAW WHERE THE PERSON AGAINST WHOM INDEMNITY OR CONTRIBUTION IS SOUGHT IS THE WORKMEN'S COMPENSATION EMPLOYER

Where the plaintiff in a tort action is an employee of a contractor doing business with a principal, the liability of the statutory employer is limited to workmen's compensation by the Louisiana Workmen's Compensation Act whether or not the injury results from the employer's negligence. LSA–R.S. 23:1032. See generally, Comment, The Right of a Third Party to Contribution or Indemnity from a La. Workmen's Comp. Employer, 38 Tul.L.Rev. 536 (1964). This has been interpreted to preclude a claim by the principal for contribution by the contractor (the statutory employer) when the contractor's fault is a joint cause "or is even the predominant cause of the damages." Smith v. Kelly Labor Service, La.App.1970, 239 So.2d 685; McLaughlin v. Braswell, La.App.1968, 207 So.2d 158; Hebert v. Blankenship, La.App.1966, 187 So.2d 798. Nor is it certain that quasi contractual indemnity could be obtained where the principal's fault is merely vicarious. See *Humble, supra* 414 F.2d at 914; *Halliburton, supra* 302 F.2d at 434; *General Electric, supra* 396 F.2d at 100–102, cf. *Hebert, supra* 187 So.2d at 803.

## V. REDISTRIBUTION OF RISKS BY CONTRACT

In the usual tort situation, there is no prior relationship between the potential tort defendant and his prospective indemnitor. Hence they have no opportunity to alter the distribution of risks. But where a principal employs a contractor, the contract between them may embrace not only the work to be done and the price to be paid, but also the risk of tort claims that may arise. See 2 Williston on Contracts, ¶ 345 (3d ed. 1959), 1 Harper and James, The Law of Torts, ¶ 10.2, at 723 (1956). By contract either party may relieve the other from the duty of contribution or from the duty of indemnity. And either may undertake a duty to contribute or indemnify where none would otherwise exist. In Louisiana the validity of an agreement by an employer to indemnify against tort claims by his own employees has been recognized even though the Workmen's Compensation Act would provide an absolute shield in the absence of such a contract. See Hebert v. Blankenship, La.App.1966, 187 So.2d 798.

Paragraph 5.1 of the contract between Chevron and Mechanical then is an attempt to allocate the risk of certain kinds of loss that may arise during the course of its performance. Such a loss might arise when a third person, unrelated to either party is injured; when an employee of Chevron is injured; when an employee of Mechanical is injured and sues Chevron; or when property damage is sustained by Chevron.

As applied to all of these situations, and particularly the situation where an injured person sues Chevron, this provision must have been intended to alter in some way the rules governing risk distribution that would otherwise be applied. So our effort must be to determine in what way the parties intended to alter these rules.

Contractual provisions containing similar terms have been involved in three

cases, two decided by Louisiana's Appellate Courts, and one decided by the Fifth Circuit Court of Appeals, applying Louisiana law. Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir. 1970, 429 F. 2d 1033; Arnold v. Stupp Corp., La. App.1967, 205 So.2d 797; Jennings v. Ralston Purina Co., La.App.1967, 201 So.2d 168. Compare, Dickerson v. Continental Oil Co., 5 Cir., 449 F.2d 1209, (1971). The words used in the contract involved here are set forth below, and beside them are the provisions interpreted in the other three cases.

| Cole | Jennings | Arnold | Gorsalitz |
|---|---|---|---|
| "Contractor shall indemnify and save Company harmless from and against any and all loss * * * resulting directly or indirectly from Contractor's performance of this contract." (Emphasis supplied) | "Contractor shall protect, indemnify and hold harmless Company from any loss * * * directly or indirectly arising or growing out of the performance of this Contract * * *." (Emphasis supplied) 201 So.2d 174. | [Contractor] "agrees to defend, indemnify and save harmless [Company] against any and all liability * * * arising out of, caused by or resulting from * * * any business transaction with or work done for [Company] by [Contractor]." (Emphasis supplied) 205 So.2d at 798–799. | "Contractor shall indemnify Owner against: (a) any claim, demand, suit, loss or liability * * * arising out of work performed hereunder * * * occasioned by acts or omissions, whether or not negligent, of Contractor's officers, employees, agents or subcontractors." (Emphasis supplied) 429 F.2d at 1048–1049. |

In *Jennings, supra* an employee of a building contractor sued the principal in tort for injuries he received as a result of negligence by the principal's employees. The principal impleaded the contractor as a third party defendant asserting the indemnity provision of their contract. Not only did the indemnity provision contain the general language that the contractor would "hold Company harmless * * * for any * * * injury sustained by any person resulting from the performance of this Contract," but it went on to require that the contractor obtain liability insurance to protect the company from claims by "contractor's workmen." 201 So.2d at 174. Finding that the principal was solely negligent, the court then required indemnification by the contractor-employer, holding that the phrase "any * * * injury arising out of the performance of the contract" included all injuries, whether or not the damage resulted from the principal's negligence. As a result of this decision, it is established that indemnification for one's own negligence is available in Louisiana, even though words specifically assuming liability for the party's own "negligence" or "fault" are absent from the contract.

Six months after *Jennings*, another Louisiana Court of Appeals decided *Arnold, supra* under substantially similar facts. Again the principal was solely negligent, and the contract provided indemnification for "any and all liability * * * caused by or resulting from any business transaction with or work done for [the principal] by [contractor]." 205 So.2d at 797. The court held that this language was not sufficiently clear and unequivocal to shift the risk of liability for the principal's sole negligence. *Jennings* was distinguished on the basis of its contractual provision requiring the contractor to obtain insurance to protect the principal against claims by the contractor's workmen. 205 So.2d at 803.

In *Gorsalitz, supra,* as here, the injured person was an employee of the defendant in the third party complaint from whom indemnification was being sought. The jury there had found the principal defendant negligent in 15 different respects. Hence it was clear that its liability was predicated directly on its own negligence. The court considered that the indemnity agreement did not shift liability for this kind of negligence to the indemnitor because a reasonable construction of the contract was that the

contractor intended to indemnify the principal *only* for negligent acts of the contractor's employees, 429 F.2d at 1049. After comparing the indemnity agreement in *Jennings* with the one involved in *Gorsalitz,* the Court of Appeals found that the agreement in *Jennings* "demonstrates a clear and unequivocal intent * * * as compared to the contrary intent in this case, to indemnify the indemnitee against his own negligence." 429 F.2d at 1050.

## VI. APPLYING THE CONTRACT TO THE COLE CLAIM

All of these cases then involve the question of indemnity for a tort caused by the indemnitee's sole fault. And all of them discuss the contract provisions in terms of "fault" or "negligence" whether or not these words are employed. As indicated by the discussion in Part I, Chevron here seeks indemnity for damages that I conclude were caused "directly or indirectly" by Mechanical. If it is necessary to go further and decide whether this implies joint fault, then I conclude that Mechanical was jointly negligent.

Pretermitting the question whether the contract between Chevron and Mechanical affords indemnity for injuries sustained as a result of Chevron's sole negligence, the only remaining scope that could be afforded it would be: (1) To provide *indemnity* for Chevron when an accident was caused in part by Mechanical; (2) To provide *contribution* for Chevron when an accident was caused by both jointly; (3) To provide costs of defense in both of these situations and in the situation where Chevron is exonerated. Since the contract speaks in terms of *indemnity,* not contribution, it appears not to require merely a division of risk. Since this contract, unlike insurance policies, does not contain a separate obligation to defend, it appears not to contemplate merely the costs of litigation. Should Chevron's motion be granted and its Section 6, LSA–R.S. 23:1061, defense be upheld, however, the language would appear to embrace costs of defense.

As to the one remaining situation, which is here presented directly, a judgment predicated directly or indirectly on Mechanical's acts, it appears that the language of the indemnity agreement must have been intended to afford protection to Chevron, else the agreement would cover nothing save possibly the costs of defense. Obviously if the agreement is broad enough to cover Chevron's sole fault, then it reaches the present case as well.

The parties have stipulated that the damage suffered by Chevron amounted to $6,195.00 in addition to any sum for which it may be obligated to Cole.

For these reasons the claim for indemnity by Chevron against Mechanical will be granted. Counsel for Chevron will prepare an appropriate form or order, to remain interlocutory until the motions still pending on the main demand are disposed of.