Calvin DAY

v.

**OCEAN DRILLING AND EXPLORATION COMPANY.**

Civ. A. No. 72–754.

United States District Court,
E. D. Louisiana.

Jan. 25, 1973.

---

6. San Francisco-Oakland Newspaper Guild v. Tribune Publishing Co., 407 F.2d 1327, 1328 (C.A.9, 1969).

Charles Hanemann, Houma, La., for plaintiff.

W. K. Christovich, New Orleans, La., for Ocean Drilling and Exploration Co.

John O. Charrier, Jr., New Orleans, La., for Houma Welders, Inc. and Travelers Insurance Co.

ALVIN B. RUBIN, District Judge:

■ The motion for summary judgment raises the oft litigated question of interpreting a contract containing an indemnity agreement. The issue is not to be determined by narrowly parsing a single clause or sentence, but by reading the contract as a whole. Louisiana Civil Code, Art. 1955; White v. California Co., W.D.La.1965, 260 F.Supp. 586; Reuter v. Reuter's Succession, 1944, 206 La. 474, 19 So.2d 209; Solomon v. Hickman, La.App.1969, 219 So.2d 330.

Odeco, as Drilling Contractor, made a service contract with Houma Welders, as subcontractor, on a printed form prepared by Odeco. The contract contained the following agreements by Subcontractor (Houma):

(1) To perform its work "diligently and without delay, in a safe, proper and workmanlike manner . . . ." (Par. 2)

(2) To carry workmen's compensation, employer's liability insurance and comprehensive general liability insurance in stipulated amounts, requiring that "such insurance shall additionally cover the contractual liabilities and indemnities herein assumed by Subcontractor (Houma) with minimum limits of $300,000.00" (Par. 8). The policies were to be carried in companies acceptable to Odeco with a clause forbidding cancellation without 10 days notice to Odeco. The policies were to waive subrogation against Odeco.

(3) ". . . [T]o indemnify and hold harmless Drilling Contractor from and against . . . any and all claims, demands, or suits for damages to persons and/or property . . . which may be brought against Drilling Contractor (including, but not limited to those brought by Subcontractor's employees and agents . . .) incident to, arising out of, in connection with, or resulting from the activities of Subcontractor, its employees and agents . . . or in connection with the work to be performed, services to be rendered, or material to be furnished, under this contract, . . . whether occasioned, brought about or caused in whole or in part by the negligence of Drilling Contractor, its agents, directors, officers, employees, servants or subcontractors, or otherwise . . ., regardless of whether such negligence or unseaworthiness be actibe or passive, primary or secondary.'' (Par. 9).

(4) To release Drilling Contractor from liability for damages to Subcontractor's equipment or materials even though caused in whole or in part by Drilling Contractor's negligence. (Par. 10).

(5) To report all accidents or occurrences involving personal injury or property damage to Drilling Contractor. (Par. 11).

Day, plaintiff in this action, was an employee of Houma. He was working on a fixed platform located on the Outer Continental Shelf. He went to get some boards and a pipe wrench. While returning with these to the place where his work was to be done, he passed by a compressor owned by Odeco. As he passed it, it suddenly flashed and exploded, injuring him. Neither Day nor any other Houma employee had any duties in connection with the compressor, and it is not contended that they had anything to do with causing the explosion. It was a mere happenstance that

Day was at the place where he was injured.

■ Louisiana law applies to Day's cause of action, 43 U.S.C. § 1331 et seq.; Rodrique v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360. A fortiori, it applies to the interpretation of the contract, which was made in Louisiana, and was to be applied to work on the platform.

■ The Outer Continental Shelf Act, 43 U.S.C. § 1333, states that where applicable and not inconsistent with other provisions, the civil and criminal laws of each adjacent State "as of August 7, 1953"[1] shall be employed. Thus it clearly directs application of State law as of that date. While this clause precludes the application of State statutes enacted after that date, as well as other changes in State law occurring thereafter, the statute does not imply that this federal court, in determining what Louisiana law was at that time, must blind itself to decisions rendered by Louisiana courts after that date. As is the case with State decisions arising after a federal appeal has been lodged but the question is the application of State law at an earlier time, Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 1940, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447, 537, the Court may look to all decisions of State courts that enlighten it concerning what Louisiana law in fact was in 1953, whether they were rendered before or after that time.

■ In Louisiana, as indeed it would be elsewhere, the contract is the law between the parties. Louisiana Civil Code Art. 1901. Louisiana courts have said that an indemnity agreement is to be read narrowly, but that "does not mean it is to be disregarded. The agreement must be given effect according to the intention of the parties . . . ." Cole v. Chevron Chemical Company-Oronite Division, E.D.La.1971, 334 F.Supp. 263, 265.

The Louisiana rules for interpreting indemnity agreements, as reflected in a series of decisions,[2] are discussed at length in this court's earlier opinion in Cole v. Chevron Chemical Company-Oronite Division, E.D.La.1971, 334 F. Supp. 263.

There are a host of cases, in Louisiana[3] and elsewhere[4] dealing with the meaning to be given such terms as "arising out of" and "in connection with" when used in such agreements. A few of the cases cited in the notes are singularly apposite to the present factual situation; while they deal with interpretation of the law of other states, or with matters arising in admiralty, they do not appear to be circumscribed by these differences.

■ But we neither need to, nor should, rest this decision on so narrow a basis. For, whatever the words of indemnity alone might mean, the contract, taken as a whole, clearly reflects the parties' intention to require Houma to protect Odeco against all risks of harm

1. When the statute was incorporated into the U. S. Code, the words were revised from, "as of the effective date of this sub-chapter." There is no substantial difference in the meaning of the words, and certainly no substantive change in their interpretation was authorized or intended.

2. Arnold v. Stupp Corp., La.App.1968, 205 So.2d 797; Jennings v. Ralston Purina Co., La.App.1967, 201 So.2d 168. See also Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir. 1970, 429 F.2d 1033; Dickerson v. Continental Oil Co., 5 Cir. 1971, 449 F.2d 1209.

3. See Gorings v. Edwards, La.App.1969, 222 So.2d 530; Smith v. Brown, La.App. 1964, 162 So.2d 179; LeCompte v. Kay, La.App.1963, 156 So.2d 75; Smith v. Brown, La.App.1962, 147 So.2d 452; Harvey v. Caddo DeSoto Cotton Oil Co., La.App.1941, 6 So.2d 742.

4. See, for example, Martin Wright Electric Co. v. W. R. Grimshaw Co., 5 Cir. 1969, 419 F.2d 1381; Alamo Lumber Co. v. Warren Petroleum Corp., 5 Cir. 1963, 316 F.2d 287; Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co., 5 Cir. 1951, 189 F.2d 374.

to Houma's employees while on the platform, not merely by assuming this risk itself, but by carrying insurance to cover it. Houma could take the cost of this insurance into account in determining the cost of the work, just as it would take into account the cost of any other service it was obliged to furnish.

Odeco's intention to require broad and complete indemnity, and Houma's agreement to furnish it, is evident from the complex of contractual clauses already referred to. Houma was to indemnify not only against injuries "arising out of" or "in connection with" the work; it was to indemnify against injuries "incident to," or "resulting from" the work. Odeco was not to rely on Houma's indemnity; Houma was to take out not only comprehensive general liability insurance, but also, because it was evident that the contract would cause it to assume risks not embraced by such insurance, it was to add contractual liability and indemnity coverage. This was all in addition to an agreement diligently to do its job in a workmanlike manner, so it evidently covered a risk, as it expressly said, of injuries caused in whole by Odeco's negligence.

Furthermore, the risk of the flash fire was one that Houma's employees were subjected to by their presence on the platform. It was an additional hazard to which they were exposed by virtue of their work.

Such agreements are designed, in the economic sense to shift the risks arising from a hazardous enterprise. See Cole v. Chevron Chemical Company-Oronite Division, E.D.La.1971, 334 F.Supp. 263, 266–268. Here two industrial contractors, of substantial size, entered into an agreement that, taken as a whole, clearly evidenced the intention that Houma and its insurers would hold Odeco harmless from the kind of injury to one of Houma's employees that allegedly occurred. We need not pause to determine whether the consequences might be different if one clause or another of the contract had been written differently. We take it as written and as a whole. On this basis it requires that the motion for summary judgment as to the interpretation of the agreement be granted.