**GULF OFFSHORE COMPANY, a Division of the Pool Company, Appellant,**

v.

**MOBIL OIL CORPORATION et al., Appellees.**

**No. B2159.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Dec. 12, 1979.

Rehearing Denied Jan. 9, 1980.

4

Charles D. Kennedy, Bradley A. Jackson, Royston, Rayzor, Vickery & Williams, Houston, for appellant.

Frank Caton, Gary L. Marks, Crain, Caton, James & Oberwetter, Joseph D. Jamail, S. Gus Kolius, John B. Neibel, Nat B. King, Jamail & Kolius, Houston, for appellee.

Before COULSON, SALAZAR and JUNELL, JJ.

SALAZAR, Justice.

Appellant, Gulf Offshore Company, a Division of the Pool Company, appealed from a judgment for indemnity rendered in favor of appellee, Mobil Oil Corporation. Appellant Gulf Offshore was third party defendant below and appellee Mobil was defendant and third party plaintiff. Steven Gaedecke was plaintiff in the trial court.

Steven Gaedecke, an employee of third party defendant-appellant Gulf Offshore, sued defendant-appellee Mobil, and L. A. Levy, Inc., Arthur Levy Boat Service, Inc. and Offshore Crews, Inc., for personal injuries sustained on a vessel owned by Levy and chartered by Mobil. Mobil later filed a

third party complaint against Gulf Offshore, alleging liability for indemnity pursuant to certain provisions in the contract for well completion operations which was executed by Gulf Offshore as the contractor-indemnitor and Mobil as platform owner-indemnitee.

Prior to trial, plaintiff Gaedecke settled with the Levy defendants for a guaranteed recovery of $100,000.00 and proceeded to take a non-suit against them. Plaintiff also reached agreement with defendant Mobil, that if Mobil did not obtain indemnity from Gulf, plaintiff's recovery against Mobil would be limited to $200,000.00 plus the compensation lien. Also present in the trial court was intervenor, Employers' National Insurance Company.

On September 22, 1975, plaintiff Gaedecke was safely aboard the vessel Salton-Seahorse, having been evacuated pursuant to the implementation of Mobil's hurricane evacuation plan. Defendant Mobil had arranged for the vessel, owned and operated by Levy, to stand by for the evacuation. Following preparation for evacuation, all machinery was shut down, and after evacuation from the platform of all but two platform workers employed by Gulf Offshore by use of the crane, even its generator was shut off. As the last two workers, the crane operator and his helper, attempted to evacuate from the platform using a rope to swing onto the deck of the Salton-Seahorse, plaintiff heard some party yell down to him to go aft and provide assistance. A large wave washed across the aft area of the vessel where he had positioned himself and plaintiff was swept along the deck of the vessel and ended up against a pallet loaded with sand. Plaintiff Gaedecke suffered injuries primarily to his back.

At trial in response to special issues, the jury returned a verdict which found that defendant, Mobil Oil Corporation, failed to exercise that degree of care that should have been exercised by a reasonably prudent offshore platform operator in waiting until approximately 9:00 a. m. on September 22, 1975, to evacuate the platform and in the selection of the method used to evacuate the crew from the platform; that such were a proximate cause of the plaintiff's injuries; that $900,000.00 would be a sum which would fairly and reasonably compensate plaintiff for injuries suffered; and that plaintiff's injuries were incident to, or resulted directly or indirectly from, the work to be performed by Gulf Offshore under its contract with Mobil. The trial court entered judgment based on the jury's answers to the special issues and granted indemnity to Mobil from Gulf Offshore for $900,000.00 less the compensation lien of $32,712.09. Gulf Offshore appeals from the judgment of indemnity.

Defendant Mobil and third party defendant Gulf Offshore entered into contract number 1159, which concerned oil well completion operations to be performed by Gulf Offshore on defendant Mobil's platform wells situated in Grande Isle, Block 95, offshore of the State of Louisiana. Section 15 set out the provisions made concerning insurance and indemnity:

15. INSURANCE AND INDEMNITY:

15.1 At any and all times during the term of this agreement, Contractor agrees to maintain in force and submit evidence of insurance equal to or in excess of the requirements detailed in Exhibit B attached hereto and made a part hereof.

15.2 All insurance shall be carried in a company or companies acceptable to Mobil and shall be maintained in full force and effect during the term of this agreement, and shall not be canceled [sic], altered, or amended without ten (10) days prior written notice having first been furnished Mobil. Upon request Mobil shall be furnished certified copies of all such insurance policies.

15.3 In the event Contractor is a self-insurer and Mobil has consented to Contractor's being a self-insurer as to any one or more of the risks as to which coverage is required, evidence of such consent must be in writing and approved by a representative of Mobil authorized to enter into such consent agreement.

15.4 Contractor shall protect, indemnify and save Mobil Harmless against any and all claims, demands and causes of action of every kind and character arising in favor of any person, including both Mobil's and Contractor's employees, on account of personal injuries or death, or damage to property occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed by Contractor hereunder, whether such loss, damage, injury or liability arises from or is contributed to by the negligence of Mobil or its employees, and whether due to imperfection of any material furnished by Mobil, or the premises themselves or any equipment thereon, whether latent or patent, or for any other cause whatsoever; and for damages for infringement of any patent as more particularly set forth in Paragraph 23 hereof.

■ Appellant's first point of error addresses the threshold question of the jurisdiction of the courts of the State of Texas to entertain causes of action filed pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C.A. §§ 1331–1356 (1979). There is no dispute. as to the applicability of the Outer Continental Shelf Lands Act to this case. 43 U.S.C.A. § 1333(a)(1) (1975), in effect at the time of this accident, states that:

The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

The section of the Act in effect in this case, 43 U.S.C.A. § 1333(b) (1975), governing jurisdiction specifies that:

The United States district courts shall have original jurisdiction of . cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the adjacent State nearest the place where the cause of action arose.

We note that nowhere in this section does the word "exclusive" appear. Appellant argues that the Act vests exclusive jurisdiction of the subject matter of the plaintiff's main cause of action and the indemnity action in federal district court. We do not read 43 U.S.C.A. § 1333(b) (1975) so as to oust our state courts of subject matter jurisdiction in this case.

No authoritative case law, either state or federal, has resolved the issue of the exclusivity of federal court jurisdiction over actions filed pursuant to the Outer Continental Shelf Lands Act. In *Fluor Ocean Services, Inc. v. Rucker Company*, 341 F.Supp. 757 (E.D.La.1972), and *Borne v. Tenneco Oil Company, et al.*, 1973 A.M.C. 388 (E.D.La. 1972), Judge Rubin held that the Act conferred exclusive jurisdiction on the U.S. district courts for causes of action arising out of operations conducted on the outer Continental Shelf and further held in *Fluor* that the intent of Congress was to make such operations subject to the exclusive control and jurisdiction of the federal government. We disagree for the reasons stated in the foregoing paragraph. We also note that in the penultimate paragraph of the opinion in *Fluor*, Judge Rubin merely found that the federal district court had original jurisdiction.

Judge Rubin wrote that as a matter of policy, ". . . in an area where the federal government had exerted exclusive sovereignty, such as the outer Continental Shelf, a single federal forum would be more appropriate than multiple state forums to decide disputes that arise there." *Fluor Ocean Services, Inc. v. Rucker Company, supra* at 760. We do not believe this to be necessarily so. The Act provides that the Constitution and laws of the United States govern the outer Continental Shelf, 43 U.S. C.A. § 1333(a)(1) (1975), and where applicable and not inconsistent with this Act or with federal laws, the laws of the adjacent state are declared to be the law of the United States regarding the outer Continental Shelf. 43 U.S.C.A. § 1333(a)(2) (1975). The end result would be an application of the same laws no matter where the forum was located, whether state or federal.

Following *Fluor* is the recent decision of *Friedrich v. Whittaker Corporation,* 467 F.Supp. 1012 (S.D.Tex.1979). Here Judge Sterling recognized that the holding in *Fluor,* which acknowledged that such jurisdiction was original, did not necessarily include exclusive. Judge Sterling dismissed the case in *Friedrich* on other grounds, noting that a prompt authoritative resolution of the issue of original or exclusive jurisdiction by a federal appellate court would be welcomed. *Friedrich v. Whittaker Corporation, supra* at 1015. Nonetheless, *Friedrich* held that federal courts have exclusive jurisdiction over claims arising out of accidents on fixed oil rigs in areas covered by the Outer Continental Shelf Lands Act. *Id.* at 1014.

One Louisiana decision, *Gravois v. Travelers Indemnity Company,* 173 So.2d 550 (La.Ct.App.), *writ ref'd,* 247 La. 1016, 175 So.2d 301 (1965), has also faced the issue of the exclusivity of federal court jurisdiction under the Outer Continental Shelf Lands Act. The majority opinion, holding for exclusive federal court jurisdiction under the Act, drew a vigorous dissent. We follow the dissent in *Gravois* in two respects by holding that our state courts

may take cognizance of an action asserted under this Act irrespective of the fact that the incident giving rise thereto occurred within the federally defined limits of the outer Continental Shelf, and secondly, that our state courts have jurisdiction to adjudicate plaintiff's claims irrespective of which law must be applied in the determination thereof. *Gravois v. Travelers Indemnity Company,* 173 So.2d at 556, 559.

43 U.S.C.A. § 1333(b) (1975) of the Outer Continental Shelf Lands Act was amended and renumbered in 1978 to 43 U.S.C.A. § 1349(b)(1) (1978) and now reads in pertinent part as follows:

> . . . the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter. Proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose.

The word "original" was omitted in the 1978 version. We find this omission significant in that it further supports our holding that the Act neither intended nor required sole original or exclusive jurisdiction in the federal courts. Point of error one is overruled.

In its second point on appeal, appellant Gulf Offshore contends that its Motion for Judgment Non Obstante Veredicto was improperly overruled because the jury verdict upon which the judgment of indemnity in favor of defendant Mobil was predicated, was the product of fraud and collusion by attorneys for plaintiff and Mobil, and Mobil, therefore, is precluded from obtaining indemnity as a matter of law. A motion for judgment non obstante veredicto is

proper ". . . if a directed verdict would have been proper . . . ." Tex.R. Civ.P. 301.

In determining whether the trial court erred in refusing to grant a motion for judgment notwithstanding the verdict, the inquiry is whether there is any evidence of probative force to support the verdict of the jury. *City of San Augustine v. Roy W. Green Company*, 548 S.W.2d 467, 472 (Tex. Civ.App.—Tyler 1977, writ ref'd n. r. e.). In determining whether there is any evidence of probative force to support the verdict, we are required to view the evidence in the light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. *Id.* at 472.

Based on the record, we fail to see how the jury's verdict in the instant case could be construed to be the product of fraud and collusion between counsel for plaintiff and counsel for Mobil. All parties were represented in trial by highly competent attorneys; all the agreements, the legality of which is uncontested, were disclosed prior to trial in the presence of the trial judge and duly recorded by the court reporter. Counsel for appellant Gulf Offshore was given ample opportunity to question the attorneys for the plaintiff and appellee Mobil at that time.

Attorneys engaged in the trial of cases have heavy responsibilities, and must have latitude in making tactical decisions as how to best represent their clients within the bounds of propriety. *General Motors Corporation v. Hebert*, 501 S.W.2d 950, 957 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.). Under these facts, where appellee Mobil was unable to reach agreement with appellant Gulf Offshore on the issue of indemnity, it is understandable that counsel for Mobil would cooperate with counsel for plaintiff to limit Mobil's potential liability in the event Mobil did not obtain indemnity from Gulf Offshore. Point of error two is overruled.

Points of error three, four, five and six complain of the lack of evidence to support the judgment for contractual indemnity given the language in Section 15.4 of the contract. Section 15.4 states in pertinent part:

Contractor [Gulf Offshore] shall protect, indemnify and save Mobil Harmless against any and all claims, demands and causes of action of every kind and character arising in favor of any person, including both Mobil's and Contractor's employees, on account of personal injuries . . occurring, growing out of, incident to, or resulting directly or indirectly from, the work to be performed by Contractor hereunder, whether such loss, damage, injury or liability arises from or is contributed to by the negligence of Mobil or its employees . . .

Appellant Gulf Offshore contends that the plaintiff's injuries were not incident to or the result of Gulf Offshore's work to be performed under the contract with Mobil.

We find sufficient evidence in the record to support the jury's answer to special issue four which inquired whether or not plaintiff's injuries were incident to, or resulted directly or indirectly from, the work to be performed by Gulf Offshore under its contract with Mobil. Plaintiff's own testimony that it was the normal thing to do to assist the last two Gulf Offshore employees off the platform even though an evacuation was in progress and that it was customary to help other Gulf Offshore employees in the regular course of their work was uncontroverted. The evidence elicited regarding the work operations on the platform justifies the jury's answer that the injuries suffered by the plaintiff were incident to, or resulting directly or indirectly from the work required. These points of error are overruled.

In points of error seven, eight and nine, appellant Gulf Offshore contends that Louisiana law, applied as controlling federal law in this case, and Texas law prohibit contractual indemnity between an oil company and a contractor unless there is insurance coverage or alternatively, that any liability for

indemnity should be limited to the amount of insurance required by the contract. Furthermore, appellant by relying on Tex.Rev. Civ.Stat.Ann. art. 2212b (Vernon Supp. 1978–1979) urges that the public policy of the State of Texas prohibits contractual indemnity unless covered by insurance and then only to a maximum ceiling of $300,-000.00.

43 U.S.C.A. § 1333(a)(2) (1975), in effect at the time of this accident, states that:

To the extent that they are applicable and not inconsistent with the subchapter [Outer Continental Shelf Lands Act, 43 U.S.C.A. §§ 1331–1356 (1979)] or with other Federal laws and regulations of the Secretary [of the Interior] now.in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States   .   .   .

■ It is clear to this court that federal law, and decisions interpreting those laws, apply in this instance, and where there are no such laws or decisions, this court shall apply the laws and decisions of the State of Louisiana. The Outer Continental Shelf Lands Act makes it clear that federal law, supplemented by state law of the adjacent state, when not inconsistent with applicable federal law, is to be applied to drilling rigs as artificial islands as though they were federal enclaves in an upland state. *Rodrigue v. Aetna Casualty and Surety Company*, 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969). It is evident that federal law is exclusive in its regulation of this area, and that state law is adopted only as surrogate federal law. *Id.* at 357, 89 S.Ct. at 1888.

In *Day v. Ocean Drilling and Exploration Company*, 353 F.Supp. 1350 (E.D.La.1973), a motion for summary judgment was presented to the federal district court regarding interpretation of a contract containing an indemnity agreement similar to the one in our case. The contract before that court provided minimum limits of $300,000.00 for insurance coverage of contractual liabilities and indemnities assumed by the contractor covering all claims "incident to, arising out of, in connection with, or resulting from the activities of Subcontractor, its employees and agents   .   .   . or in connection with the work to be performed, services to be rendered, or materials to be furnished, under this contract   .   .   ." *Id.* at 1351.

Plaintiff Day was working on a fixed platform located on the outer Continental Shelf. As he passed by a compressor, it suddenly exploded, injuring him.

Louisiana law was applied in *Day* as surrogate federal law to interpret the contract. The court held that while Louisiana courts have read such an indemnity agreement narrowly, the agreement must be given effect according to the intention of the parties. *Id.* at 1352. Judge Rubin did not limit his interpretation to any one of the phrases in the indemnity agreement, e. g. "arising out of" and "in connection with." Instead, taking the contract as a whole, the court held that it was the intention of the parties to require indemnity against all risks of harm with insurance coverage and that such an indemnity agreement would be upheld.

■ We disagree with respect to the position taken by appellant Gulf Offshore that indemnity agreements are not enforceable under Louisiana law without insurance coverage. This issue was not reached in *Day* as insurance coverage was undisputedly provided pursuant to the contract in that case. In the two cases cited by appellant, *Dickerson v. Continental Oil Company*, 449 F.2d 1209 (5th Cir. 1971), and *Hicks v. Ocean Drilling and Exploration Company*,

512 F.2d 817 (5th Cir. 1975), the limits of liability for the indemnitors in both cases were limited to the amounts of insurance coverage provided in the respective contracts. Unlike the facts before us, in neither case was there any dispute as to the limits of liability contracted for or that insurance coverage was in fact obtained.

■ The record in this case does not reflect any proof as to the existence of insurance obtained to protect against the risks assumed by appellant Gulf Offshore or any limits of liability agreed to by the parties in their contract. During the trial, appellee Mobil tendered into evidence certain documents identified as the contract executed by appellant Gulf Offshore and appellee Mobil, without any objections from appellant Gulf Offshore.

■ Later, appellant Gulf Offshore discovered an Exhibit B was unattached to the contract admitted into evidence. In a post-trial proceeding, appellant sought to have the exhibit made a part of the record. The unattached exhibit allegedly stated what the limits of liability were. Having made no objection to the offer of the contract at trial, appellant has waived any complaint concerning the exclusion of the exhibit. The trial court in the post-trial proceeding properly excluded the exhibit from the record since it was evidence on a controversial matter. *State v. Harrington,* 407 S.W.2d 467 (Tex.1966), *cert. den.,* 386 U.S. 944, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967); Tex.R.Civ.P. 270. For these reasons, we overrule as well appellant's alternative assertion that its liability for contractual indemnity should be limited to $100,000.00, that being the limit of liability allegedly required by the contract.

Tex.Rev.Civ.Stat.Ann. art. 2212b (Vernon Supp.1978–1979) declares indemnity provisions in agreements pertaining to wells for oil, gas, or water, or mines for other minerals, where there is negligence attributable to the indemnitee, void and unenforceable as against the public policy of the State of Texas, except if the parties agree in writing, that such indemnity obligation will be supported by liability insurance furnished by indemnitor, and then only to the limits of insurance agreed to be furnished.

■ We hold that this provision has no application to the instant case. Applying federal law pursuant to the Outer Continental Shelf Lands Act and Louisiana law as surrogate federal law, where not inconsistent with federal law, the indemnity agreement in this case does not fail as against the public policy of the State of Louisiana irrespective of the existence or non-existence of insurance. *Hicks v. Ocean Drilling and Exploration Company,* 512 F.2d at 826; *Dickerson v. Continental Oil Company,* 449 F.2d at 1221. Following Justice Guittard in *Mamlin v. Susan Thomas, Incorporated,* 490 S.W.2d 634, 636–37 (Tex.Civ. App.—Dallas 1973, no writ), we hold that the Texas concept of public policy cannot prevail against the national policy enunciated in a federal act as declared by Congress in matters within its power. Points of error seven, eight and nine are overruled.

Appellant Gulf Offshore next urges error in the alignment of parties prior to the assignment of peremptory challenges and in the failure to equalize the challenges among the parties, thereby depriving appellant of a fair trial. Plaintiff Gaedecke was awarded twelve peremptory challenges and appellant Gulf Offshore and appellee Mobil were each awarded six peremptory challenges.

■ The granting of peremptory challenges depends on whether the interests of the parties within the meaning of Tex.R. Civ.P. 233 are, at least in part, antagonistic in a matter that the jury is to be concerned with. *Perkins v. Freeman,* 518 S.W.2d 532 (Tex.1974). Tex.Rev.Civ.Stat.Ann. art. 2151a (Vernon Supp.1978–1979) requires the trial court, after alignment of the parties, to equalize the number of peremptory challenges.

■ The record on appeal consists of a partial statement of facts, the jury voir dire having been omitted. Antagonism between plaintiff and appellee Mobil was shown by the pleadings and none of the pre-trial concessions changed that. The record does not

reflect in any manner how appellant was injured by the jury selection process.

■ Appellant assigns as error the refusal of four requested special issues which inquire about appellee Mobil's negligence as vessel-charterer of the Salton-Seahorse. Appellant contends that favorable answers to these special issues could have established the negligence of Mobil as vessel-charterer being the sole cause of plaintiff's injuries, thereby precluding contractual indemnity against appellant Gulf Offshore. 33 U.S.C.A. § 905(b) (1978) precludes liability of an employer by agreement directly or indirectly for injuries to an employee caused by the negligence of a vessel.

We do not find any evidence in the record nor do the pleadings reveal that the issue of sole cause was raised. Tex.R.Civ.P. 279 requires that when a case is submitted upon special issues, only those controlling issues made by the written pleadings and the evidence shall be submitted. There was evidence from which the jury could have found appellee Mobil negligent as a fixed platform operator or as a vessel-charterer. Given the jury's answers to the special issue actually submitted, finding Mobil negligent in the capacity as fixed platform operator, the result would not have changed. We find no error in the refusal to submit the requested issues.

In its last three points of error, appellant attacks the refusal to submit tendered instructions prohibiting consideration by the jury of inflationary trends or increases in productivity as factors affecting awards for future wage loss, the inapplicability of federal income taxes and the reduction of any future damage award to present value by the use of an appropriate interest rate prevailing at time of trial.

■ The trial court properly refused to permit the jury from considering evidence as to inflationary trends as an element of damages for future wage loss. *Davis v. Hill Engineering Company*, 549 F.2d 314 (5th Cir. 1977); *Johnson v. Penrod Drilling Company*, 510 F.2d 234 (5th Cir.) (en banc), *cert. den.*, 423 U.S. 839, 96 S.Ct.

68, 46 L.Ed.2d 58 (1975). Increases in productivity were not proper for consideration by the jury. *Davis v. Hill Engineering Company*, 549 F.2d at 335. *Davis, Johnson*, and another case cited by appellant, *Blue v. Western Railway of Alabama*, 469 F.2d 487 (5th Cir. 1972), *cert. den.*, 410 U.S. 956, 93 S.Ct. 1422, 35 L.Ed.2d 688 (1973), do not hold that appellant would be entitled to an affirmative instruction prohibiting the jury's consideration of these factors. Furthermore, the record before us gives no indication that the jury in fact considered inflationary trends or increases in productivity in calculating the damages award.

■ *Johnson v. Penrod Drilling Company*, 510 F.2d at 236–37, specifically prohibits consideration by the jury by evidence or instruction, of the impact of income taxes in the calculation of a proper award for loss of future wages.

■ *Davis, Johnson* and *Blue* permit a trial court to admit evidence pertaining to the reduction of the award for future damages, to present value by the use of an appropriate interest rate prevailing at the time and place of trial. We hold that this was adequately provided for in the damage issue which was actually submitted and which inquired: "What sum of money, if any, if paid now cash . . ." would reasonably compensate plaintiff Gaedecke. *Davis, Johnson*, and *Blue* do not hold that appellant would be entitled to an instruction solely directing the jury to apply an appropriate interest rate to reduce to present value any sum awarded for future damages. Points of error twelve, thirteen and fourteen are overruled.

Having carefully reviewed all the points of error and the authorities cited in the briefs, we accordingly affirm the judgment of the trial court.