**Douglas STILTNER**

v.

**EXXON CORPORATION, et al.**

**Civ. A. No. 83–1340.**

United States District Court, E.D. Louisiana.

Nov. 18, 1983.

Joseph J. Weigand, Jr., Houma, La., for plaintiff.

Robert H. Wood, Jr., C. Gordon Starling, Jr., New Orleans, La., Coleman T. Organ, Metairie, La., for defendants.

McNAMARA, District Judge.

This lawsuit arises out of injuries sustained by Douglas Stiltner on July 27, 1982, while he was working on a permanent platform located on the Outer Continental Shelf off the Coast of Louisiana. Exxon was made a Defendant on the original demand and subsequently impleaded Pioneer on the basis of an indemnity provision with-

in a master-service contract entered into by Exxon and Pioneer on October 1, 1978.

On October 1, 1983, the Court heard oral arguments regarding the Motion for Summary Judgment on the Third Party Complaint of Exxon brought by Third Party Defendant, Pioneer Fishing and Rental Tools, Inc.

Pioneer contends that under the Outer Continental Shelf Lands Act (OCSLA), this contract is to be construed by the law of the adjacent state, Louisiana. 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Casualty & Surety Company*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), and, as such, the indemnity provision is unenforceable as a matter of law in light of Louisiana's Oilfield Indemnity Act, La.R.S. 9:2780. As stated in oral argument, this Court finds that the Oilfield Indemnity Act would indeed bar any indemnity from Pioneer to Exxon under the facts of this case, *if* Louisiana law is applicable.

However, during oral argument, counsel for Exxon raised the issue of whether the master-service contract was instead a maritime contract to be interpreted by general maritime law, which would not necessarily invalidate the indemnity provision. *See Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983). The parties were permitted to submit additionally briefs on this narrow issue.

Whether a particular contract is of the maritime genre is dependent on the nature and character of the contract, not the situs of performance or execution of the contract. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *North Pacific SS Co. v. Hall Bros. Marine Railway & Shipbuild-*

ing Co., 249 U.S. 119, 125, 39 S.Ct. 221, 221–23, 63 L.Ed. 510 (1919). A maritime contract is generally defined as one "relating to a ship in its use as [an agent of maritime enterprise], or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." 1 *Benedict on Admiralty*, § 183 (7th Ed.1981). *See also General Engine & Machine Works, Inc. v. Slay*, 222 F.Supp. 745, 747 (S.D.Ala.1963). Although "the boundaries of admiralty jurisdiction over contracts, as opposed to torts, being conceptual rather than spatial, have also been difficult to draw," *Kossick*, 365 U.S. at 735, 90 S.Ct. at 890, courts considering the question have almost uniformly held without detailed discussion [1] that drilling and other oilfield-related contracts are to be construed by admiralty law *if* the contract affects operations aboard a vessel. *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981); *Transcontinental Gas Pipeline Co. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir.1970); *Halliburton Co. v. Norton Drilling Co.*, 302 F.2d 431, 437 (5th Cir.1962); *Terra Resources, Inc. v. Atchafalaya Workover Contractors, Inc.*, 1980 A.M.C. 1082, 1087–88 (E.D.La.1978); *Ocean Science & Engineering, Inc. v. International Geomarine Corp.*, 312 F.Supp. 825, 828 (D.Del.1970); *Pure Oil Co. v. Geotechnical Corp. of Delaware*, 129 F.Supp. 194, 196 (E.D.La. 1955); *Cason v. Diamond M Drilling Co.*, 436 So.2d 1245, 1253 (La.App. 1st Cir. 1983).[2] Conversely, those same types of contracts affecting non-vessels are controlled by state law pursuant to the OCSLA. *Dickerson v. Continental Oil Co.*, 449 F.2d 1209, 1221 (5th Cir.1971), *cert. denied* 405 U.S. 934, 92 S.Ct. 942, 30

---

**1.** Perhaps the lack of discussion is attributable to the fact that the contracts indigenous to the offshore oil industry do not even remotely resemble typical maritime contracts (*See e.g., Benedict, supra* at § 186) except for the fact that sometimes the services of a vessel are required to facilitate offshore drilling. In fact, the *Rodrigue* court noted "Maritime law in the strict sense has never had to deal with the resources in the ground beneath the sea, and its whole tenor is ill adapted for that purpose." 395 U.S. at 366, 89 S.Ct. 1842 n. 12 quoting Hearings

before the Senate Committee on Interior and Insular Affairs, 83d Cong., 1st Sess., on S. 1901 (1953) p. 668.

**2.** As noted in *Cason*, the court in *Hicks v. ODECO*, 512 F.2d 817 (5th Cir.1975) erroneously relied on *Dickerson*, 449 F.2d 1209, to justify application of Louisiana's law of indemnity, although it found that the contract effected operations aboard a vessel. 436 So.2d at 1253 n. 2.

L.Ed.2d 809 (1972); *Holden v. Placid Oil Co.*, 473 F.Supp. 1097, 1101 (E.D.La.1979); *Day v. ODECO*, 353 F.Supp. 1350, 1352 (E.D.La.1973).

 In accordance with the above authorities, I find that the contract in question is *not* a maritime contract because the operations which were the subject matter of the master-service contract in no way related to the services of a vessel. Whether the contract was actually performed on a vessel is not decisive. *North Pacific S.S. Co.*, 249 U.S. at 125–26, 39 S.Ct. 222–23. Nonetheless, without any nexus between the subject matter of the contract and the operations, services or activities of a vessel, the nature of the contract is not such that it could be said to be inherently maritime. *Ocean Science & Engineering*, 312 F.Supp. at 826–29. Moreover, the concerns of maintaining uniformity will not serve to set this contract afloat. Such concerns have already been abandoned under the OCSLA in favor of applying the diverse laws of the various "adjacent states". *See Note, State Court Jurisdiction Under the Outer Continental Shelf Lands Act: Gulf Offshore Co. v. Mobil Oil Corp.*, 28 Loy. L.R. 343 (1982) for a discussion of OCSLA's choice of law scheme and the impact of *Rodrigue*.

Relying on *Pippen v. Shell Oil Co.*, 661 F.2d 378 (5th Cir.1981), Exxon advances the novel argument that the object of the master-service contract is sufficiently maritime because "offshore drilling—the discovery, recovery, and sale of oil and natural gas from the sea bottom—is maritime commerce". 661 F.2d at 384. However, the conclusion reached in *Pippen* is limited to the narrow context of defining the "status test" for coverage under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.*, and not factors determinative of the nature of a contract. *Id.* at 383–85. For instance, in *Sohyde Drilling & Marine v. Coastal States Gas Producing Co.*, 644 F.2d 1132 (5th Cir.1981), the Fifth Circuit Court of Appeals held that for purposes of the Admiralty Extension Act, 46 U.S.C. § 740, activities aboard a submersible drilling rig *were not* substantially related to a "maritime activity". *Id.* at 1136–38. See *Pippen*, 661 F.2d at 384 n. 10.

Accordingly,

IT IS ORDERED that the Motion of Pioneer Fishing and Rental Tools, Inc. for Summary Judgment dismissing the Third Party Complaint of Exxon be and it is hereby GRANTED.