## HOME INSURANCE COMPANY

v.

## GARBER INDUSTRIES, INC.

### Floyd BREITBACK

v.

## GARBER BROTHERS, INC., et al.

**Civ. A. Nos. 82–1575, 82–2481.**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

July 17, 1984.

Jeansonne, Gibbens, Blackwell & Briney, Craig W. Marks, Lafayette, La., for Home Ins. Co.

William Henry Sanders, Jena, La., and Wilson M. Montero, Jr. and Joseph E. Roberts, Metairie, La., for Floyd Breitback.

Voorhies & Labbe, Robert L. Ellender, Andrus, Preis & Kraft, Edwin G. Preis, Jr. and Gregory J. Laborde, Lafayette, La., for Forest Oil Corp.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Joseph L. Lemoine, Jr., Lafayette, La., for CRC Mallard, Inc.

## RULING

SHAW, District Judge.

This case must begin where *Hale v. Co-Mar Offshore Corporation*, 588 F.Supp. 1212 (W.D.La.1984), ended. *Hale* had hardly left its berth when the Court was faced with a factual situation bringing the implications of that decision into question. This Court held in *Hale* that maritime law governed the legal issues pertaining to an indemnity clause in an Outer Continental Shelf drilling contract where the indemnity claim arose out of the performance of a maritime obligation under the drilling contract. The plaintiff in *Hale* was a seaman actually engaged in the performance of the maritime obligation. The plaintiff in the case at bar is a platform worker who was allegedly injured at least in part by maritime operations conducted pursuant to a platform drilling contract. Thus, the Court must determine whether, in light of *Hale*, admiralty law should apply to the platform indemnity agreement on these facts. If the Court concludes that platform law applies, then the issues raised by the parties concerning the Louisiana Oilfield Anti-Indemnity Act, La.R.S. 9:2780 will become pertinent.

## I.

The *Hale* plaintiff alleged that he was injured while working as a seaman aboard a supply boat which was time-chartered to the operator of a fixed drilling platform located on the Outer Continental Shelf off the coast of Texas. The operator had agreed to furnish the supply boat pursuant to its contract with the drilling contractor. The seaman sued his immediate employer, the operator/time-charterer, and the drilling contractor. The drilling contractor turned to the operator for defense and indemnity under a provision in the drilling contract. That agreement provided that it would be construed and enforced under Oklahoma law. The operator countered that the choice of Oklahoma law was ineffective because it would contravene a fundamental policy of the State of Texas against indemnity for the indemnitee's negligence in oilfield contracts. The Court held, however, that the contract questions were governed by maritime law because the injury occurred in the performance of a maritime obligation under the drilling contract. The Court found that the choice of Oklahoma law was effective because the indemnity agreement did not violate any fundamental policy of maritime law.

In the case at bar, Floyd Breitback allegedly was injured while working for CRC Mallard, Inc. on a fixed drilling platform on the Outer Continental Shelf off the coast of Louisiana. Forest Oil Corporation owned the platform and Mallard was on the platform under a blanket workover contract. Forest agreed to furnish crewboats and workboats under this contract. Pursuant to this agreement, Forest chartered a crewboat, the M/V Blue Tarpon, from Garber Brothers, Inc. by way of a blanket master service contract. Breitback alleges that he was injured while Garber employees were pumping drilling mud from the Garber vessel to the Forest platform. Allegedly, the Garber employees increased the pressure in the line to the point that the hose broke loose and "jerked" a ladder in a manner that caused Brietback injury.

Brietback sued both Forest and Garber to recover for his injuries. Plaintiff apparently seeks recovery from Garber based on its negligence and from Forest under Civil Code article 2322 based on "ruin" of the building. *Cf. Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614 (5th Cir.1983) (the last step of a ladder on a platform gave way); *Champagne v. Chevron U.S.A., Inc.*, 605 F.2d 934 (5th Cir.1979) (defective fire hose). Forest has brought a cross-claim against Garber and Mallard seeking contractual indemnity, tort indemnity and contribution. Garber in turn sought contribution from Mallard because each may owe Forest indemnity under the respective agreements. Garber also seeks basic tort indemnity and contribution. The matter comes before the Court on the motion of Garber to dismiss Forest's contractual indemnity claim and on the motion of Mallard to dismiss Garber's cross-claim in its entirety. Both Garber and Mallard attack the claims pertaining to contractual indemnity under the Louisiana Oilfield Anti-Indemnity Act, La.R.S. 9:2780.[1]

The *Hale* issue arises in regard to the Forest-Mallard indemnity agreement because the plaintiff was allegedly injured by a vessel performing maritime services that the platform owner was obligated to provide under the workover contract. The argument therefore lies that *Hale* requires the application of admiralty law to this particular indemnity claim because "the injury òccur[red] in the performance of a maritime obligation." *Hale*, 588 F.Supp. at 1215. The Court concludes, however, that the source of the injury-producing fault does not determine whether maritime or platform law applies to the contractual indemnity claim. Adoption of such a criterion would often leave the choice of law for the indemnity claim in doubt until a jury determined whether the injury was due to platform or to vessel fault. More significantly, the criterion would provide no guidance at all where concurrent vessel-platform fault appears.

The rule of *Hale* can thus be restated in the following manner. If a platform drilling contract contains both maritime and nonmaritime obligations, admiralty law will apply to those indemnity claims that arise under the contract when the injured party was himself employed to provide maritime services contemplated by the drilling contract. Admiralty law will not apply to the indemnity claim merely because a party was injured by maritime operations conducted pursuant to the platform drilling contract. Thus, platform law governs the indemnity claim where, as here, the platform worker is injured by (rather than *in*)[2] the performance of a

---

1. Mallard's other contentions are considered in part III of this Ruling. This portion of the Ruling has not been published due to its lack of precedential value.

2. The Court expresses no definitive opinion as to the result that would follow if the platform worker, like the *Sieriacki* seaman of not-too-distant yore, was aboard the vessel doing work traditionally performed by a member of the crew when he was injured. Such a situation may have been presented in *Gulf Offshore Company v. Mobil Oil Corporation*, 594 S.W.2d 496 (Tex.Civ.App.1979), *aff'd in part, vacated in part*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1980). Gulf Offshore was performing well completion operations for the platform owner, Mobil, when evacuation of the platform workers became necessary because of an impending hurricane. The evacuation was effectuated by a crewboat chartered by Mobil. The plaintiff, a platform employee of Gulf Offshore, was injured while he was aboard the vessel assisting in the evacuation process. The opinion is not clear as to whether Mobil was obligated to provide a crewboat under the contract with Gulf Offshore.

Arguably, the *Gulf Offshore* plaintiff was engaged in work traditionally performed by a member of the crew of a vessel. He was assisting in the taking on of personnel in order to carry them over water away from what might be considered as a maritime peril. If the crewboat was supplied by Mobil pursuant to its contract with Gulf Offshore, then perhaps maritime law should have been applied to the indemnity claims involved due to the fact that the injured worker was actually engaged in providing the maritime service contemplated by the platform contract. The next paragraph in the text of this opinion may point to the opposite conclusion, however. The *Gulf Offshore* court applied platform law without indicating its analysis.

maritime obligation under the drilling contract.

The restated rule accords with the ground for applying admiralty law in the *Hale* context. Admiralty law intruded into the platform agreement on the basis of its jurisdiction over maritime obligations in mixed contracts. *See Hale*, 588 F.Supp at 1214–1215. As this jurisdictional intrusion is grounded in contract, the requirement of a maritime contractual link directly pertaining to the injured party provides the most appropriate parameter for the jurisdiction.

■ By way of contrast, where the contract is *wholly* maritime, admiralty law will apply to the contractual indemnity claim arising therefrom without regard to the status of the injured worker. The need to choose between platform law and maritime law never arises because the contract's obligations are all subject to maritime law. For example, in the instant case, Garber's contract to charter a crewboat to Forest is wholly maritime. Thus, absent an effective contrary choice of law provision,[3] maritime law would govern the indemnity claim under the contract arising out of Breitback's accident. Maritime law would apply to Forest's indemnity claim against Garber despite the fact that platform law applies to Forest's indemnity claim against Mallard arising out of the same incident. *Cf. In re Dearborn Marine Service, Inc.*, 499 F.2d 263 (5th Cir.1974), *cert. dismissed*, 423 U.S.

886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975) (the claim of an OCS platform worker killed by platform negligence while aboard a vessel moored nearby was governed by state law as surrogate federal law, but the claims of the crewmembers aboard the same vessel were governed by maritime law).

The Court therefore concludes that the application of Louisiana law to the Forest-Mallard indemnity claim does not contradict anything said in *Hale*. As noted earlier, Louisiana law governs the Forest-Garber indemnity claim pursuant to a contractual choice of law provision. The Court will now turn to the issues of Louisiana law raised by the parties, which are of no less moment.

## II.

### *The Louisiana Oilfield Anti-Indemnity Act*

The contractual indemnity obligation running from Garber to Forest is found in a "Master Service Contract" dated March 20, 1981. The contractual indemnity obligation running from Mallard to Forest is found in a blanket "Workover Contract" dated August 10, 1981. Article 4.1 of the Garber agreement requires Garber to defend and indemnify Forest against its own concurrent negligence.[4] Article 9(F) of the Mallard agreement obligates Mallard to defend and indemnify Forest against claims by Mallard employees without regard to sole or concurrent negligence by Forest.[5] Gar-

---

**3.** The Garber-Forest contract provides for the application of Louisiana law.

**4.** Article 4.1 provides as follows:

4.1 *General Indemnity.* Except for indemnity for claims by employees of Contractor or its subcontractors as provided for in Section 4.2 below, Contractor agrees to indemnify, defend, and save harmless, Forest, its officers, directors, employees, agents, invitees (including all parties who have a contractual right to observe or monitor operations hereunder), and any and all working interest holders with Forest who either wholly or partially bear the cost of operations hereunder (hereinafter collectively or individually referred to as the 'Forest Group') against any and all claims, demands, or suits (including, but not limited to, claims, demands, or suits for bodily injury, illness, disease, death or for loss of services, property, wages or profits)

which may be brought against the Forest Group or in which the Forest Group may be named a party defendant, in any way arising out of or incident to the performance of this Contract or the use by Contractor of common operational areas or common areas of ingress or egress to operating areas and whether or not any such claims, demands, or suits are occasioned by the negligence of Forest Group, or unseaworthiness or unairworthiness of vessels or craft. Except as provided below, however, Contractor shall not be held responsible for claims, demands, or suits attributable solely and exclusively to the negligence of Forest.

**5.** Article 9(F) provides that indemnity and defense are owed "even though occasioned, brought about or caused in whole or in part by the negligence of Owner, its agents, ..., contractors or subcontractors, or the ... employees ... of said contractors or subcontractors...."

ber and Mallard contend that these indemnity agreements are void in their entirety under La.R.S. 9:2780.

That section 2780 governs this type of indemnity agreement cannot be seriously disputed. The indemnity provisions are "contained in, collateral to, or [affect] an agreement pertaining to a well for oil [or] gas." La.R.S. 9:2780(B). An initial question arises, however, as to whether the Act applies to agreements such as these that were executed prior to the effective date of the Act, September 11, 1981.

Section 2780 applies to agreements that are designed to provide indemnity for all work performed between the parties in the future. As the statute says, "[t]his specifically includes what is commonly referred to in the oil industry as master or general service agreements or blanket contracts in whatever form and by whatever name." La.R.S. 9:2780(I). By way of contrast, the statute does not apply to contracts that govern a "specific terminable performance" when such a contract was executed before the effective date of the Act. *Id.* The clear inference from this statutory distinction between the two types of contracts is that the Act will apply to a master service contract even if executed prior to the effective date of the Act.

██ The Garber-Forest agreement is just such a "master service contract," similarly, the Forest-Mallard workover contract is not limited to a "specific terminable performance." The contracts are therefore governed by section 2780 without regard to their date of execution. As the accident in question here occurred after the effective date of the Act, the Court need not consider whether section 2780 is intended to

apply retroactively to blanket service contract indemnity claims arising out of accidents occurring prior to September 11, 1981. *Cf. Tobin v. Gulf Oil Corp.,* 535 F.Supp. 116 (E.D.La.1982) (the court held that the Act was not applicable to a workover contract indemnity provision where the accident occurred prior to September 11, 1981). The Act clearly applies where, as here, the injury giving rise to the blanket service contract indemnity claims occur after September 11, 1981. *Accord Credeur v. Union Oil Company,* No. 82–0275, (W.D.La. June 27, 1983).[6]

The inquiry now turns to what effect section 2780 has on Forest's claims for contractual indemnity. Garber and Mallard assert that section 2780 nullifies the indemnity agreements *in their entirety* because they contain provisions which purport to provide for defense and indemnity against Forest's own negligence. These assertions are not fully supported by the statutory language, however. Subsection (B) of the Act plainly states that an oilfield indemnity agreement "is void and unenforceable *to the extent* that it purports to or does provide" for defense and indemnity against the negligence or other fault of the indemnitee or, among others, independent contractors who are directly responsible to the indemnitee. This language compels the conclusion that section 2780 nullifies an oilfield indemnity agreement *only* to the extent that the agreement purports to defend and indemnify a party against the consequences of its own negligence. Application of section 2780 leaves the indemnity agreement valid and enforceable in all other respects.[7]

---

6. Moreover, Article 1.1 of the Garber contract states that the agreement shall become effective and operative when [Garber] first commences the performance of any job or the rendering of any particular service. Performance did not begin here, and the contract thus did not go into effect, until after the effective date of the Act. Thus, the contract would be governed by section 2780 even without resort to the foregoing analysis. *Cf. Long v. Diamond M Drilling Co., Inc.,* 674 F.2d 425 (5th Cir.1982) (the Texas oilfield anti-indemnity statute did not apply to the renewal drilling contract because the last act

required for the formation of the renewal contract occurred prior to the effective date of the statute).

7. Significantly, Article 4.4 of the Garber contract contemplates just such a limited invalidation of the indemnity agreement:

   4.4 *Legal Limitations.* It is hereby understood and agreed that the indemnity agreements set forth in this contract are subject to any restrictions or, limitations imposed by law, but only to the extent of such restrictions or limitations.

Thus, in the instant case, Forest cannot enforce the agreements to indemnify and defend Forest against its own concurrent negligence. Yet Garber and Mallard must indemnify and defend Forest to the extent that the agreements cover claims that are not occasioned by the negligence or other fault of Forest or one of its independent contractors. As a practical matter, this means only that Forest will be entitled to its costs of defense for Garber and Mallard if the jury finds that Forest and the independent contractors directly responsible to Forest were not negligent or otherwise at fault.[8]

### III.* *Other Issues*

### IV.

Accordingly, the motion for partial summary judgment brought by Garber Brothers, Inc. is GRANTED, but only to the extent that Forest Oil Corporation cannot recover defense and indemnity if it or its independent contractors who are directly responsible to Forest Oil Corporation were negligent or otherwise at fault. Similarly, the motion for summary judgment brought by CRC Mallard, Inc. is GRANTED to the extent that (a) Garber Brothers, Inc. will be entitled to contribution from CRC Mallard, Inc. on Forest Oil Corporation's defense and indemnity claim only if Forest Oil Corporation and its independent contractors who are directly responsible to Forest Oil Company are not negligent or otherwise at fault and (b) Garber Brothers, Inc. is not entitled to tort indemnity or tort contribution from CRC Mallard, Inc. In all other respects, the motions are DENIED.

---

8. The Court notes that there is an issue as to whether section 2780 is inconsistent with federal law and thus inapplicable on the Outer Continental Shelf. *See Doucet v. Gulf Oil Corporation,* No. 82–4818 (E.D.La. May 17, 1984). As Forest has not even seen fit to oppose Garber's motion, much less brief this particular issue, the Court will not now address it.

* See fn. 1, ante.