John WILSON

v.

J. RAY McDERMOTT & COMPANY, INC., et al.

Civ. A. No. 83–5632 "I" (5).

United States District Court, E.D. Louisiana.

Aug. 20, 1985.

Alan R. Sacks, New Orleans, La., for movant.

Andre' J. Mouledoux, Alan G. Brackett, Hebert, Mouledoux & Bland, New Orleans, La., for respondents.

MENTZ, District Judge.

## MEMORANDUM OPINION

On May 29, 1985, the Court denied J. Ray McDermott & Company, Inc.'s motion for summary judgment to compel J.R.F. Enterprises, Inc. and third-party defendant, Certain Underwriters at Lloyd's, to indemnify, defend and hold harmless McDermott on the basis that the Louisiana Oilfield Anti-Indemnity Act, LSA–R.S. 9:2780, nullifies the indemnity provisions of the agreement entered into between J.R.F. Enterprises, Inc. and McDermott. Defendants, J.R.F. Enterprises, Commercial Union Assurance Company, and David A. Beaumont, filed a cross-motion for summary judgment nullifying *in toto* the indemnity provisions contained in the J. Ray McDermott and Company, Inc. Blanket Subcontractor's Agreement. J.R.F. Enterprises, Commercial Union and Beaumont claim that the Louisiana Oilfield Indemnity Act of 1981, La.Rev. Stat.Ann. § 9:2780 (West Supp.1985), completely bars McDermott's indemnity claim. After oral argument, the Court directed the parties to file any additional briefs they deemed necessary by June 3, 1985 at which time the motion filed by J.R.F. Enterprises, Beaumont and Commercial Union would be taken under submission. The Court has now considered the memoranda, pleadings, exhibits, and documents submitted in this matter, and based on the record and the law concludes that the motion filed by J.R.F. Enterprises, Beaumont and Commercial Union should be GRANTED IN PART. The Court has also reconsidered its ruling on McDermott's motion and upon reflection, the Court has decided to modify its previous ruling and GRANT IN PART McDermott's motion.[1]

---

1. McDermott filed a motion for reconsideration of the Court's denial of its motion for summary judgment during the drafting of this opinion. This motion is set for hearing on August 21, 1985. In that regard, the Court has taken into consideration the arguments made by McDermott and the counterarguments made by J.R.F. Enterprises in the drafting of its opinion and finds it unnecessary to hear oral argument on McDermott's motion for reconsideration.

The plaintiff herein was a member of the welding crew employed by J.R.F. Enterprises to assist in the construction of a fixed platform for Exxon. The platform was being constructed on the outer continental shelf by McDermott, which hired J.R.F. Enterprises to provide a crew of structural welders to assist in the construction of the Exxon platform. On September 30, 1983, plaintiff was allegedly injured while involved in the construction of the platform off the coast of Louisiana. The Blanket Subcontractor's Agreement entered into between McDermott and J.R.F. Enterprises contains reciprocal indemnity provisions, which are at issue, providing each contracting party shall defend and hold the other harmless from any claims or actions brought against the other by one of its employees, regardless of fault. In the agreement McDermott is designated as the "contractor" and J.R.F. Enterprises is designated as the "subcontractor".

■ Pursuant to the first motion filed by McDermott, the Court found the indemnity agreement to be governed by Louisiana law not maritime law. *See Home Insurance Co. v. Garber Industries, Inc.*, 588 F.Supp. 1218, 1220–21 (W.D.La.1984); *Frazier v. Columbia Gas Development Corp.*, 596 F.Supp. 429, 430–31 (W.D.La.1984). Whether a particular contract is of the maritime genre is dependent on the nature and character of the contract, not the situs of performance or execution of the contract. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56, 60 (1961); *Stiltner v. Exxon Corp.*, 593 F.Supp. 18, 19 (E.D.La.1983). A maritime contract is generally defined as one "relating to a ship in its use as [an agent of maritime enterprise], or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment". 593 F.Supp. at 19; 1 *Benedict on Admiralty*, § 183 (7th Ed.1981). *See also General Engine & Machine Works, Inc. v. Slay*, 222 F.Supp. 745, 747 (S.D.Ala.1963). Courts considering the question have almost uniformly held without detailed discussion that drilling and other oilfield-related contracts are to be construed by admiralty law *if* the contract affects operations aboard a vessel. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981); *Stiltner v. Exxon Corp., supra.* The *Stiltner* court states that perhaps the lack of discussion is attributable to the fact that the contracts indigenous to the offshore oil industry do not even remotely resemble typical maritime contracts except for the fact that sometimes the services of a vessel are required to facilitate offshore drilling. 593 F.Supp. at 19 n. 1. Conversely, those same types of contracts affecting non-vessels are controlled by state law pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). *Dickerson v. Continental Oil Co.*, 449 F.2d 1209, 1221 (5th Cir. 1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972); *Stiltner v. Exxon Corp., supra.*

■ The contract in question is *not* a maritime contract because the operations which were the subject matter of the master-service contract in no way related to the services of a vessel. Whether the contract was actually performed on a vessel is not decisive. *Stiltner v. Exxon Corp.*, 593 F.Supp. at 20. While the contract no doubt contemplated the hiring of vessels and seamen to build the structure, the subject matter of this case has no direct relationship with these traditional subjects of maritime law. That the contract contemplated in part the use of instruments of admiralty is not sufficient to oust OCSLA-adopted state law in this case. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231–32 (5th Cir.1985). The nature of the contract in question is not such that it could be said to be inherently maritime. *See Stiltner v. Exxon Corp.*, 593 F.Supp. at 20.

■ Moreover, the Outer Continental Shelf Lands Act ["OCSLA"], 43 U.S.C. § 1333(a)(2)(A) (West Supp.1983), provides state law is applicable to resolve controversies arising on the outer continental shelf in the absence of conflicting federal law. Congress considered maritime law ill-adapted to deal with legal disputes arising from the exploration and development of underground resources on the outer continental

shelf. This is the reason why Congress provided for the application of state law as surrogate federal law under the Outer Continental Shelf Lands Act. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co., supra.* The concerns voiced by Congress over the inaptness of maritime law in the resource-developing context were general in nature and apply equally well to the technologically difficult task of platform *construction* and its inevitable attendant legal problems. 754 F.2d at 1233. Thus, federally adopted state law is not ousted by maritime law in this action. Accordingly, Louisiana law is applicable to "fill the gap" with regard to the propriety of contractual indemnity as to non-vessel owners' activities on a fixed platform on the outer continental shelf. *Rigby v. Tenneco Oil Co.,* 607 F.Supp. 1247, 1250 (E.D.La.1985); *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477, 101 S.Ct. 2870, 2874, 69 L.Ed.2d 784, 791 (1981). Contracts for the performance of services on or in the construction of fixed offshore platforms are controlled by Louisiana law. *Rodrigue v. Aetna Casualty,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969); Note, 43 La.L.Rev. 189, 208. *See also Laredo Offshore Constructors, Inc. v. Hunt Oil Co., supra.* Moreover, the Court does not see any conflict between state law and general maritime law of indemnity. It is well settled that maritime law is not applicable to fixed platforms on the outer continental shelf. *See Rodrigue v. Aetna Casualty, supra; Laredo Offshore Constructors, Inc. v. Hunt Oil Co., supra; Rigby v. Tenneco Oil Co., supra.*

Thus, in determining the limits of contractual indemnity in this case, the Court finds it appropriate to apply the Louisiana Oilfield Anti-Indemnity Act, as it perceives no conflicting applicable federal law with regard to McDermott's right to seek indemnity. Further, the recognition afforded indemnity agreements under general maritime law does not prevent the application of the Oilfield Anti-Indemnity Act to the blanket agreement at issue here. *See Home Insurance Co. v. Garber Industries, Inc., supra; Frazier v. Columbia Gas Development Corp., supra.* In addition, the execution of the "Blanket" contract prior to the effective date does not preclude its application, where as here, the contract did not specify "terminable performance of a specific job or activity". *See* R.S. 9:2780(I); *Home Insurance Co. v. Garber Industries, Inc.,* 588 F.Supp. at 1222; *Rigby v. Tenneco Oil Co.,* 607 F.Supp. 1247, 1248 (E.D.La. 1985); *Durant v. Chevron, U.S.A., Inc.,* 594 F.Supp. 527, 535–36 (E.D.La.1984); *Tobin v. Gulf Oil Corp.,* 535 F.Supp. 116, 117 (E.D.La.1982). On May 29, 1985, the Court found that McDermott was not entitled to *any* defense of indemnification from J.R.F. or its insurers since the agreement was null and void and against public policy per R.S. 9:2780. At this time, the Court has decided to reconsider its ruling denying McDermott *any* defense of indemnification from J.R.F. Enterprises or its insurers.

■ In that regard, the Court does not find that a denial of McDermott's motion for summary judgment automatically requires the Court to grant the cross-motion of J.R.F. Enterprises, Beaumont and Commercial Union. The Court must determine what effect R.S. 9:2780 has on the contractual indemnity provisions. J.R.F. Enterprises, David Beaumont and Commercial Union assert that section 2780 nullifies the indemnity provisions in their entirety because the "Blanket" contract contains provisions which purport to provide for defense and indemnity against McDermott's own negligence. These assertions are not fully supported by the statutory language, however. Subsection (B) of the Act plainly states that an oilfield indemnity agreement "is void and unenforceable *to the extent* that it purports to or does provide" for defense and indemnity against the negligence or other fault of the indemnitee. This language compels the conclusion that section 9:2780 nullifies an oilfield indemnity agreement only to the extent that the agreement purports to defend and indemnify a party against the consequences of its own negligence. Application of section 2780 leaves the indemnity agreement valid and enforceable in all other respects. *Home Insurance Co. v. Garber Industries, Inc.,* 588 F.Supp. at 1222; *Frazier v. Co-*

*lumbia Gas Development Corp.,* 596 F.Supp. at 431–32.

As the Court in *Rigby* recently held, the application of the Oilfield Anti-Indemnity Act will serve to nullify only the obligation of the contractor, Tenneco, from its own negligence or other fault *if* the contractor is found to be solely or concurrently negligent or otherwise at fault in this matter. 607 F.Supp. at 1250. However, the act does not itself bar the contractor's action for contractual indemnity against the subcontractor for the subcontractor's fault. In the case at bar, the subcontractor, J.R.F. Enterprises, has not established a legal basis under state law or otherwise to void the obligation to indemnify the contractor, McDermott, for J.R.F. Enterprises' own fault.

Thus, in the present case as the Court has already held, McDermott cannot enforce the agreement to indemnify and defend . McDermott against its own negligence. This part of J.R.F. Enterprises', Beaumont and Commercial Union's motion is GRANTED. Yet, J.R.F. Enterprises must indemnify and defend McDermott to the extent that the agreement covers claims that are not occasioned by the negligence or other fault of McDermott, or one of its employees, officers and agents. As a practical matter, this means only that McDermott will be entitled to its costs of defense for J.R.F. Enterprises if the trier of fact finds that McDermott was not negligent or otherwise at fault.[2] Thus, the Court's original ruling as to McDermott's motion for summary judgment is hereby MODIFIED to reflect the partial granting of McDermott's motion. Accordingly,

The Court entertains the defendants' motion for summary judgment to nullify the indemnity provisions in the Blanket Subcontractor's Agreement and GRANTS IN PART and DENIES IN PART, said motion in accordance with the reasoning stated above.

Further, this ruling shall modify the Court's order denying McDermott's motion for summary judgment for indemnification; in other words, McDermott's motion for summary judgment is GRANTED IN PART and DENIED IN PART in accordance with the reasoning stated above.

Further, the hearing on McDermott's motion for reconsideration set for Wednesday, August 21, 1985 at 10:00 a.m. is hereby CANCELLED.

---

2. In *Sullen v. Missouri Pacific Railroad Company,* 750 F.2d 428, 433–34 (5th Cir.1985), the Court held

"that *unless* the contract of indemnity specifically provides for costs of defense as a separate item of indemnification, the indemnitor has no obligation to defend if the petition alleges facts, which, if proven, would establish liability of the indemnitee but preclude coverage under the indemnity agreement." [Emphasis added].

*See also Laird v. Shell Oil Company,* 770 F.2d 508 (5th Cir.1985). The Blanket Subcontractor's Agreement between J. Ray McDermott & Com-

pany, Inc. and J.R.F. Enterprises, Inc. specifically provides for costs of defense as a separate item. *See* Paragraph VIII, Subsection (I), which states in pertinent part:

Subcontractor shall be obligated to bear the *expense* of the investigations and *defenses* of all claims or demands or causes of action against which McDermott is indemnified herein, and all lawsuits and administrative proceedings arising therefrom, .... [Emphasis added].

Therefore, McDermott shall be entitled to its costs of defense *only* if it is one hundred percent (100%) exonerated by the trier of fact.